STATE OF NORTH CAROLINA v. KENNETH WAYNE MAREADY

No. 32A08

(Filed 12 December 2008)

## 1. Search and Seizure— traffic stop—reasonable suspicion

The Court of Appeals erred in a prosecution for second-degree murder arising from a traffic accident and other offenses by concluding officers lacked reasonable suspicion to conduct a traffic stop of defendant because: (1) the overarching inquiry when assessing reasonable suspicion is always based on the totality of circumstances; (2) the potential indicia of reliability included all the facts known to the officers from personal observation including those that did not necessarily corroborate or refute the informant's statements; (3) an informant's ability to provide a firsthand eyewitness report is one indicator of reliability; and (4) the officers had sufficient grounds to subject defendant to the minimal intrusion of a simple investigatory stop based on facts including that they observed an intoxicated man stumbling across the roadway to enter a silver Honda automobile; saw a minivan with its emergency flashers activated driving unusually slowly, and eventually coming to a halt immediately in front of the Honda; responded after being flagged down by the minivan driver who seemed to be distressed; and obtained information in a face-to-face encounter that the driver of the Honda, whom the minivan driver had apparently been in a position to observe, had been running stop signs and stop lights.

## 2. Evidence— prior crimes or bad acts—six driving while impaired convictions—malice—intent—plain error analysis

The trial court did not commit plain error in a second-degree murder case based on vehicular homicide by its instructions to the jury regarding the purposes for which they could consider defendant's prior driving while impaired convictions because: (1) evidence of a defendant's prior traffic-related convictions is admissible to prove the malice element in a second-degree murder prosecution based on vehicular homicide; (2) irrespective of defendant's prior convictions, the State presented such significant evidence of intent with regard to all the charges against defendant that it cannot be said that the challenged instruction probably affected the jury's verdicts; (3) defendant's own statements to officers on the day of the accident showed his knowl-

edge and understanding that he was driving illegally and was not going to stop; (4) regarding the charges of driving while impaired, driving while license revoked, and careless and reckless driving, the defense conceded the State had presented sufficient evidence for the jury to find defendant guilty; (5) regarding the larceny and possession of stolen goods charges, the defense conceded all elements of the State's case except the value of the stolen vehicle; and (6) these concessions, in conjunction with the abundance of direct and circumstantial evidence of defendant's intent when committing the crimes for which he was convicted, lead to the conclusion that any purported error in the jury instructions did not have a probable impact on the jury's finding of guilt.

**3. Evidence— prior crimes or bad acts—stale convictions— more than sixteen years old—plain error analysis**

The trial court did not commit plain error in a second-degree murder case based on vehicular homicide by admitting into evidence prior traffic-related convictions against defendant that were more than sixteen years old because: (1) given that the jury in this case was aware of defendant's four DWI convictions in the sixteen years preceding the offenses at issue, it cannot be said that the jury probably would have reached different verdicts if it had not been informed of his other two DWI convictions and nine convictions for other traffic-related offenses; (2) our Supreme Court rejected the notion that its per curiam opinion in *State v. Goodman*, 357 N.C. 43 (2003), established a bright-line rule that admission of any traffic-related conviction that occurred more than sixteen years before the events at issue in a second-degree murder case amounted to plain error per se; (3) the relevance of a temporally remote traffic-related conviction to the question of malice does not depend solely upon the amount of time that has passed since the conviction took place, and instead the extent of its probative value depends largely on intervening circumstances; (4) the older convictions did not serve only to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged, but instead constituted part of a clear and consistent pattern of criminality that was highly probative of his mental state at the time of his actions in regard to this case; and (5) remoteness in time generally affects only the weight to be given N.C.G.S. § 8C-1, Rule 404(b) evidence, not its admissibility, and this is especially true when, as here, the prior conduct tended to show a defendant's state of mind as opposed

to establishing that the present conduct and prior actions are part of a common scheme or plan.

      Justice TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 188 N.C. App. 169, 654 S.E.2d 769 (2008), reversing judgments entered 24 April 2006 by Judge Abraham P. Jones in Superior Court, Durham County, and remanding for a new trial on all charges. Heard in the Supreme Court on 8 September 2008.

    *Roy Cooper, Attorney General, by Isaac T. Avery, III, Special Counsel, for the State-appellant.*

    *Staples S. Hughes, Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellee.*

NEWBY, Justice.

This case, which involves an investigatory traffic stop and the subsequent criminal trial, presents three issues. First, we determine whether the law enforcement officers who conducted the traffic stop had reasonable suspicion to justify their detention of defendant. Next, we resolve whether the trial court committed plain error in its instructions to the jury regarding the purposes for which they could consider defendant's prior convictions. Finally, we decide whether it was error for the trial court to admit into evidence prior convictions against defendant that were more than sixteen years old. Because we hold the traffic stop was lawful and defendant received a trial free of plain error, we reverse the decision of the Court of Appeals.

## I. BACKGROUND

As a result of a traffic accident in which a person was killed, a Durham County grand jury indicted defendant for second-degree murder; felonious larceny and felonious possession of stolen goods (based on the theft of an automobile); assault with a deadly weapon inflicting serious injury; two counts of assault with a deadly weapon; driving while impaired; driving while license revoked; careless and reckless driving; felony speeding to elude arrest; and habitual felon status. At his trial, defendant moved to suppress all testimony related to the traffic stop that gave rise to these charges, arguing the

officers who detained him lacked reasonable suspicion of criminal activity. In its order denying the motion to suppress, the trial court made findings of fact based on the voir dire testimony, stating in essence the following.

On 12 February 2005, two deputies from the Durham County Sheriff's Office were on patrol and saw an apparently intoxicated man walking along Sherron Road in Durham County. The man was staggering near the roadway, so the deputies began driving toward him. As they did so, the deputies saw in the opposite lane a minivan being driven at a slow pace with its hazard lights activated. Behind the minivan was a silver Honda Civic. The officers watched as the intoxicated man ran across the roadway, crossing two traffic lanes, and got into the Honda. After passing the minivan, which had come to a stop, the Honda continued down Sherron Road. The deputies turned around, and as they pulled alongside the minivan, its driver signaled to them to get their attention. The minivan driver appeared distraught and told the deputies they needed to check on the driver of the silver Honda because he had been driving erratically, running stop signs and stop lights. The deputies continued along Sherron Road and found the Honda stopped at a stop light. They activated their blue lights and conducted an investigatory stop of the Honda, which defendant was found to be driving.

After the trial court denied defendant's motion to suppress, one of the deputies repeated his voir dire testimony in the presence of the jury and then continued recounting the facts. He stated that when he approached the Honda after it pulled over to the side of the road, he detected a strong odor of alcohol and noticed defendant's motor skills appeared to be impaired. When asked if he had been drinking, defendant admitted that he had. The deputies ordered defendant out of the vehicle in order to perform sobriety tests, but defendant refused. When the deputies tried to remove defendant from the vehicle by force, he "said that he was not going back to the penitentiary, and he put the vehicle into gear and sped off." The deputies got back in their patrol car and pursued defendant, and despite traveling at approximately sixty-five to seventy miles per hour (in a forty-five-mile-per-hour zone), they were unable to gain on the Honda. They soon rounded a curve and saw the Honda "flipping continuously," as well as a red pickup truck flipping at the same time. The deputies found the driver of the truck thrown from her vehicle, resulting in fatal injuries. An SBI agent testified that defendant's blood, drawn approximately six hours after the wreck occurred, showed an alcohol

concentration of 0.14, well in excess of the legal limit. *See* N.C.G.S. § 20-138.1(a)(2) (2005).

The jury convicted defendant of second-degree murder; misdemeanor larceny and misdemeanor possession of stolen goods; assault with a deadly weapon inflicting serious injury; two counts of assault with a deadly weapon; driving while impaired; driving while license revoked; careless and reckless driving; and felony eluding arrest. The jury also found the presence of an aggravating factor and that defendant had attained habitual felon status. A majority of the Court of Appeals reversed, holding the officers did not have reasonable suspicion to stop defendant; the trial court committed plain error in its jury instructions; and it was plain error to admit evidence of prior convictions against defendant that were more than sixteen years old. *State v. Maready,* —— N.C. App. ——, 654 S.E.2d 769 (2008). The State now appeals based on the dissent.

## II.  REASONABLE SUSPICION

**[1]** We first address defendant's contention that the initial traffic stop was unconstitutional because it was not founded on reasonable suspicion of criminal activity. This Court has recently confirmed that "reasonable suspicion is the necessary standard for traffic stops." *State v. Styles,* 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008) (citations omitted).

> Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Only " 'some minimal level of objective justification' " is required. This Court has determined that the reasonable suspicion standard requires that "[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." Moreover, "[a] court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion" exists.

*State v. Barnard,* 362 N.C. 244, 247, 658 S.E.2d 643, 645 (citations omitted), *cert. denied,* —— U.S. ——, 129 S. Ct. 264, —— L. Ed. 2d —— (2008).

The trial court concluded as a matter of law that based on the totality of the circumstances, the deputies had reasonable sus-

picion of criminal activity and were thus justified in stopping the silver Honda. We agree, as this conclusion is fully supported by the trial court's findings of fact. As noted by the Court of Appeals majority, finding of fact number eight is not supported by competent evidence insofar as it states the driver of the minivan told the deputies that defendant "may be drunk." The trial court's findings are otherwise supported by the evidence, however, and they in turn support the conclusion that the deputies had reasonable suspicion to stop defendant.

We reiterate that the overarching inquiry when assessing reasonable suspicion is always based on the *totality* of the circumstances. *Id.* When police act on the basis of an informant's tip, the indicia of the tip's reliability are certainly among the circumstances that must be considered in determining whether reasonable suspicion exists. *E.g.*, *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990). The potential indicia of reliability include all "the facts known to the officers from personal observation," *id.*, including those that do not necessarily corroborate or refute the informant's statements.

One such fact in the instant case was that the minivan was traveling immediately in front of the silver Honda as the officers approached, and thus the driver apparently would have been in a position to view the alleged traffic violations she reported. An informant's ability to provide a firsthand eyewitness report is one indicator of reliability. We also note that the minivan driver's especially cautious driving and her apparent distress were consistent with what one would expect of a driver who had witnessed a nearby motorist driving erratically.

Similarly, we give significant weight to the fact that the minivan driver approached the deputies in person and gave them information at a time and place near to the scene of the alleged traffic violations. She would have had little time to fabricate her allegations against defendant. Moreover, in providing the tip through a face-to-face encounter with the sheriff's deputies, the minivan driver was not a completely anonymous informant. It is inconsequential to our analysis that the officers did not actually pause to record her license plate number or other identifying information. Not knowing whether the officers had already noted her tag number or if they would detain her for further questioning, and aware they could quickly assess the truth of her statements by stopping the silver Honda, the minivan driver

willingly placed her anonymity at risk. This circumstance weighs in favor of deeming her tip reliable.[1]

These indicia of reliability, together with the rest of the attendant circumstances, satisfy the reasonable suspicion standard. The deputies in this case observed an intoxicated man stumbling across the roadway to enter the silver Honda; saw the minivan, with its emergency flashers activated, driving unusually slowly and eventually coming to a halt immediately in front of the Honda; responded after being flagged down by the minivan driver, who seemed to be distressed; and obtained information in a face-to-face encounter that the driver of the Honda, whom the minivan driver had apparently been in a position to observe, had been running stop signs and stop lights. Under these circumstances, the officers had sufficient grounds to subject defendant to the "minimal intrusion" of a simple investigatory stop. *See Illinois v. Wardlow*, 528 U.S. at 126, 120 S. Ct. at 677, 145 L. Ed. at 577. We therefore hold the traffic stop was constitutional and that the trial court properly denied defendant's motion to suppress.

## III. JURY INSTRUCTIONS

[2] We next consider the trial court's instructions to the jury with regard to defendant's prior convictions. At trial, the State introduced defendant's certified driving record from the Division of Motor Vehicles, which listed, *inter alia*, six prior convictions for driving while impaired. During jury instructions, the trial court told the jury they could consider this evidence "for the limited purpose for which it has been received," which the court defined as "solely for . . . showing that the defendant had the requisite malice or intent which is a necessary element of crimes charged in this case."

This Court has held evidence of a defendant's prior traffic-related convictions admissible to prove the malice element in a second-degree murder prosecution based on vehicular homicide. *State v.*

---

1.    If an informant places his anonymity at risk, a court can consider this factor in weighing the reliability of the tip. An instance where a tip might be considered anonymous but nevertheless sufficiently reliable to justify a proportionate police response may be when an unnamed person driving a car the police officer later describes stops for a moment and, face to face, informs the police that criminal activity is occurring.

*Florida v. J.L.*, 529 U.S. 266, 276, 120 S. Ct. 1375, 1381, 146 L. Ed. 2d 254, 263 (2000) (Kennedy, J. & Rehnquist, C.J., concurring) (citing *United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir.), *cert. denied*, 439 U.S. 936, 99 S. Ct. 333, 58 L. Ed. 2d 333 (1978)).

*Rich,* 351 N.C. 386, 400, 527 S.E.2d 299, 307 (2000). Defendant argues, and the Court of Appeals agreed, that the trial court exceeded the bounds of this holding by instructing the jury that defendant's prior convictions could be used to prove the intent element of each crime for which he was tried.

Because defendant failed to object to the jury instruction at trial, his challenge is subject to plain error review. *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.,* 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (citing *State v. Cummings,* 352 N.C. 600, 613, 536 S.E.2d 36, 47 (2000), *cert. denied,* 532 U.S. 997, 121 S. Ct. 1660, 149 L. Ed. 2d 641 (2001); *State v. Odom,* 307 N.C. 655, 660-61, 300 S.E.2d 375, 378 (1983)). Plain error has been defined as " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *Odom,* 307 N.C. at 660, 300 S.E.2d at 378 (quoting *United States v. McCaskill,* 676 F.2d 995, 1002 (4th Cir.) (citation omitted), *cert. denied,* 459 U.S. 1018, 103 S. Ct. 381, 74 L. Ed. 2d 513 (1982)). "In deciding whether a defect in the jury instruction constitutes 'plain error,' the appellate court must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *Id.* at 661, 300 S.E.2d at 378-79.

Assuming without deciding that there was error in the trial court's instruction, our review of the record in this case reveals any such error did not amount to plain error. Irrespective of defendant's prior convictions, the State presented such significant evidence of intent with regard to all the charges against defendant that we cannot say the challenged instruction probably affected the jury's verdicts. We call particular attention to the testimony regarding defendant's own statements on the day of the incident. During an earlier encounter with another deputy several hours before the wreck, defendant stated he had recently been released from jail, that his driver's license was suspended, and that "he didn't drive." Later, during the investigatory traffic stop, defendant admitted he had been drinking. Then, as he fled the scene of the stop, defendant "said that he was not going back to the penitentiary." These statements strongly demonstrate defendant's knowledge and understanding that he was driving illegally and was not going to stop.

Also, although not dispositive of the State's burden of proving all elements of the charges beyond a reasonable doubt, *see State v. Patterson,* 297 N.C. 247, 256, 254 S.E.2d 604, 610 (1979), a number of concessions made by the defense during closing arguments are rele-

vant in assessing the effect of the alleged error on the jury's verdicts. Regarding the charges of driving while impaired, driving while license revoked, and careless and reckless driving, the defense conceded the State had presented sufficient evidence for the jury to find defendant guilty. Regarding the larceny and possession of stolen goods charges, the defense conceded all elements of the State's case except the value of the stolen vehicle. These concessions, in conjunction with the abundance of direct and circumstantial evidence of defendant's intent when committing the crimes for which he was convicted, lead us to conclude any purported error in the jury instructions did not have "a probable impact on the jury's finding of guilt." *Odom*, 307 N.C. at 661, 300 S.E.2d at 379 (citing *United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 98 S. Ct. 3096, 57 L. Ed. 2d 1137 (1978)). We therefore hold the challenged instruction did not constitute plain error.

## IV. PRIOR CONVICTIONS

**[3]** We lastly consider the trial court's admission into evidence of prior traffic-related convictions against defendant that were more than sixteen years old. Because defendant failed to object to the admission of his driving record, we review that admission for plain error. *Dogwood Dev. & Mgmt.*, 362 N.C. at 196, 657 S.E.2d at 364 (citing *Cummings*, 352 N.C. at 613, 536 S.E.2d at 47; *Odom*, 307 N.C. at 660, 300 S.E.2d at 378).

Rule 404(b) of the North Carolina Rules of Evidence provides:

> *Other crimes, wrongs, or acts.*—Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident. . . .

N.C.G.S. § 8C-1, Rule 404(b) (2005). This Court's decisions have interpreted Rule 404(b) as

> a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.

*State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990).

Defendant's driving record contained a number of convictions that occurred more than sixteen years before the date of the crimes at issue here. The question before us is whether there is a fixed point in time when a prior conviction becomes too temporally remote to be probative. The Court of Appeals' holding that it was plain error to admit the convictions that were more than sixteen years old was based on our per curiam opinion in *State v. Goodman*, 357 N.C. 43, 577 S.E.2d 619 (2003) (*rev'g* 149 N.C. App. 57, 560 S.E.2d 196 (2002)), in which this Court reversed a Court of Appeals majority for the reasons stated in the dissenting opinion. In *Goodman*, another second-degree murder case based on vehicular homicide, the trial court had likewise admitted the defendant's full driving record. That record reflected a total of six previous driving while impaired ("DWI") convictions. The Court of Appeals majority held it was not plain error to admit the entire driving record. 149 N.C. App. at 70, 560 S.E.2d at 204-05. The dissent emphasized the defendant had few convictions in the years immediately preceding the incident at issue and argued that many of the convictions reflected in the defendant's record were too temporally remote to be admitted under Rule 404(b) of the North Carolina Rules of Evidence. *Id.* at 73, 560 S.E.2d at 206 (Greene, J., dissenting). On appeal, this Court reversed on the basis of the dissent in a per curiam opinion.

Defendant's driving record in the instant case stands in stark contrast to the record at issue in *Goodman*. Like the *Goodman* defendant, defendant here had six previous DWI convictions. However, whereas only one of the *Goodman* defendant's previous DWI convictions occurred within the sixteen years preceding the crime at issue in that case, *id.*, defendant in the case *sub judice* was convicted of DWI four times in the sixteen years leading up to the incident at issue. Moreover, while the most recent prior DWI conviction in *Goodman* occurred more than eight years before the crime at issue there, *id.*, defendant in this case was convicted of DWI less than six months before the incident giving rise to the current charges against him. The driving record in this case demonstrates a much more consistent, and therefore more probative, pattern of criminal behavior than the record in *Goodman*. Given that the jury in this case was aware of defendant's four DWI convictions in the sixteen years preceding the offenses at issue, we do not agree with defendant's contention that the jury probably would have reached different verdicts if it had not been informed of his other two DWI convictions and nine convictions for other traffic-related offenses. *See State v. Hammett*, 361 N.C. 92, 98, 637 S.E.2d 518, 522 (2006) (appellate court reviewing

evidentiary admissions for plain error must ask "whether the jury would probably have reached a different verdict if [the challenged evidence] had not been admitted" (citing *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 108 S. Ct. 1598, 99 L. Ed. 2d 912 (1988)). We therefore find no plain error in the admission of defendant's whole driving record.

In so doing, we necessarily reject the notion that this Court's per curiam opinion in *Goodman* established a bright-line rule that admission of any traffic-related conviction that occurred more than sixteen years before the events at issue in a second-degree murder case amounts to plain error per se. The relevance of a temporally remote traffic-related conviction to the question of malice does not depend solely upon the amount of time that has passed since the conviction took place. Rather, the extent of its probative value depends largely on intervening circumstances. In the instant case, in which defendant was convicted of DWI four times in the sixteen years preceding the events now at issue, his older convictions do not serve only "to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 279, 389 S.E.2d at 54. Those convictions instead constitute part of a clear and consistent pattern of criminality that is highly probative of his mental state at the time of his actions at issue here.

It remains true that assessments of the probative value of evidence under Rule 404(b) must be guided by considerations of "similarity and temporal proximity." *State v. Lynch*, 334 N.C. 402, 412, 432 S.E.2d 349, 354 (1993) (citation omitted). However, " 'remoteness in time *generally* affects only the weight to be given [404(b)] evidence, not its admissibility.' " *State v. Parker*, 354 N.C. 268, 287, 553 S.E.2d 885, 899 (2001) (internal quotation marks omitted) (quoting *State v. White*, 349 N.C. 535, 553, 508 S.E.2d 253, 265 (1998) (emphasis added), *cert. denied*, 527 U.S. 1026, 119 S. Ct. 2376, 144 L. Ed. 2d 779 (1999)), *cert. denied*, 535 U.S. 1114, 122 S. Ct. 2332, 153 L. Ed. 2d 162 (2002). This is especially true when, as here, the prior conduct tends to show a defendant's state of mind, as opposed to establishing that the present conduct and prior actions are part of a common scheme or plan. *See State v. Stager*, 329 N.C. 278, 306-07, 406 S.E.2d 876, 892-93 (1991).

Unlike the instant case, *State v. Goodman* was an exception to the general rule: a case in which the intervening circumstances between temporally distant convictions and the actions at issue militated strongly against admission of the remote convictions. Our hold-

STATE v. MAREADY

[362 N.C. 614 (2008)]

ing in *Goodman* was based on the temporal remoteness of the defendant's prior convictions *combined with* the defendant's relatively clean driving record in the years leading up to the crime at issue in that case. It does not follow that admission of any conviction greater than sixteen years old automatically constitutes error, and hence we disavow any such reading of *Goodman.*[2]

The probative value (and thus the admissibility) of 404(b) evidence must be determined on a case-by-case basis rather than through application of a fixed temporal maximum. Temporal proximity is simply one factor for courts to consider in deciding whether a piece of evidence has probative value beyond "show[ing] that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Coffey*, 326 N.C. at 279, 389 S.E.2d at 54.

## V. DISPOSITION

The decision of the Court of Appeals is reversed and this case is remanded to that court for consideration of defendant's remaining assignments of error.

REVERSED AND REMANDED.

Justice TIMMONS-GOODSON, concurring in part and dissenting in part.

I agree with the majority that the trial court properly denied defendant's motion to suppress, and I therefore concur fully with Section II of the majority opinion. I do not agree, however, that the trial court's erroneous instruction and the admission of defendant's entire driving record had no probable effect upon the jury verdict. Thus I respectfully dissent as to Sections III and IV.

As to the trial court's instruction, the Court of Appeals unanimously agreed that it was erroneous. *See State v. Maready,* —— N.C.

---

2. In adopting "the reasons stated in the dissenting opinion" in *Goodman, see* 357 N.C. 43, 577 S.E.2d 619, this Court agreed with the dissent that *in the circumstances of that case* it was plain error to admit the defendant's traffic-related convictions dating more than sixteen years from the actions at issue there. We did not, however, adopt any purported statements of law that were unnecessary to the dissent's reasoning. As evidenced by its relegation to a footnote, the statement that "any conviction dating beyond sixteen years, however slight, runs afoul of the temporal proximity requirement of Rule 404(b)," *Goodman*, 149 N.C. App. at 73 n.1, 560 S.E.2d at 206 n.1 (Greene, J., dissenting), was unnecessary to the dissent's reasoning. That statement is hereby expressly rejected.

App. ——, ——, ——, 654 S.E.2d 769, 779, 783 (2008). However, the dissenting judge in the Court of Appeals disagreed with the majority's conclusion that the instructional error amounted to plain error. —— N.C. App. at ——, 654 S.E.2d at 783 (Tyson, J., dissenting). Thus the only question regarding this issue properly before this Court is whether the instruction amounted to plain error. The majority concludes that the erroneous instruction had no probable effect upon the jury verdict. I disagree.

The State's case against defendant was not overwhelming. Defendant did not confess, and he conducted a vigorous defense. Defendant particularly contested the intent element of the charges of second-degree murder, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon, and fleeing to elude arrest. Defendant argued that he fled from the officers because he feared for his personal safety. In support of this argument, defendant presented a neutral witness, Rhonda Arnold, who worked at a hardware store across the street from where the deputies stopped defendant. Ms. Arnold witnessed the deputies' interaction with defendant and testified, in contrast to the deputies' testimony, that both officers had their weapons drawn and pointed at defendant, and that they were yelling at him to get back in his car. Defense counsel contended that, as a result of the deputies' actions, defendant panicked and fled, which was "clearly a bad decision" but was nevertheless motivated by his desire for "safety and fear of what might happen to him." Thus, the intent element of the second-degree murder, assault with a deadly weapon inflicting serious injury, assault with a deadly weapon, and fleeing to elude arrest charges was closely contested.

Moreover, the majority omits from its analysis certain facts that I believe are relevant to the plain error analysis here. First, the jury wrote a note inquiring about the intent element in the assault charges and sought clarification of the jurors' interpretation of intent. The jury asked the trial court whether the word "intent" could "be interpreted strictly only as [defendant] absolutely <u>intended</u> to hit the other cars" or whether "intent" could be "interpreted as the sum total of the actions caused the collision [and] this implies intent." The trial court informed the jury that intent "can be interpreted as the sum total of the actions caused the collision and this implies intent." The jury also specifically requested reinstruction on the intent element of the fleeing to elude arrest charge. Further, the prosecutor emphasized defendant's lengthy DMV record during the trial and argued that such records proved defendant was "acting intentionally."

STATE v. MAREADY

[362 N.C. 614 (2008)]

The jury's concern with the intent element of the crimes, combined with the State's emphasis on defendant's DMV records to show intent, demonstrates that the erroneous instruction probably influenced the jury verdict. *See State v. Goodman*, 357 N.C. 43, 577 S.E.2d 619 (2003) (per curiam) (reversing the Court of Appeals decision reported at 149 N.C. App. 57, 560 S.E.2d 196 (2002), for reasons stated in the dissenting opinion, which found plain error when the jury (1) requested to have the definition of malice read twice, and (2) later requested a written definition of malice, along with the defendant's driving record, to consider during its deliberations, *id.* at 72-73, 560 S.E.2d at 206 (Greene, J., dissenting)). In addition, the trial court's erroneous instruction—that the jury could use defendant's past convictions to find intent on *all* the charges—was particularly prejudicial because of the similarity between his past convictions and the charges in the present case. *See State v. Badgett*, 361 N.C. 234, 247, 644 S.E.2d 206, 214 (stating that "it is error to admit evidence of the defendant's prior conviction when the defendant does not testify"), *cert. denied*, —— U.S. ——, 169 L. Ed. 2d 351 (2007); *State v. Wilkerson*, 356 N.C. 418, 571 S.E.2d 583 (2002) (per curiam) (reversing the Court of Appeals decision reported at 148 N.C. App. 310, 559 S.E.2d 5 (2002), which opined, *inter alia*, that "any similarities between the *offense* of which defendant was previously convicted and the current charged *offense* (as opposed to similarities in the facts and circumstances underlying such offenses) manifestly *increases* the danger of unfair prejudice", *id.* at 327, 559 S.E.2d at 16 (Wynn, J., dissenting)).

I do not agree that defendant's own statements constitute such significant evidence of intent on all of the charges as to render the erroneous instruction harmless. Nor do I find defendant's concessions during closing argument relevant to whether the State presented substantial evidence of the intent element of the charges of assault with a deadly weapon inflicting serious injury, felony fleeing/eluding arrest with a motor vehicle, two counts of assault with a deadly weapon, and misdemeanor larceny. I moreover conclude that the admission of defendant's entire driving record also had a probable effect upon the jury verdict. I would therefore hold that defendant has demonstrated plain error, and I would affirm the Court of Appeals.