*328
 
 MURPHY, Judge.
 

 *828
 
 The State appeals from the trial court's grant of Lester Alan Walker's ("Defendant") motion to suppress. On appeal, the State contends the trial court erred by: (1) entering the 31 October 2016 order after the
 
 *829
 
 State gave its notice of appeal; and (2) granting Defendant's motion to suppress. After careful review, we hold the trial court did not err by entering the 31 October 2016 order and granting the motion to suppress.
 

 Background
 

 On 5 July 2015, State Trooper Jonathan Cody (the "Trooper") of the North Carolina Highway Patrol was on routine patrol on U.S. 258. At approximately 5:00 p.m., dispatch notified him that a driver ("the informant") reported another driver ("the driver") for driving while intoxicated. The informant reported the driver was driving from the Hubert area towards Jacksonville, traveling at speeds of approximately 80 to 100 miles per hour, while drinking a beer. He also claimed the driver drove "very erratically," and almost ran him off the road "a few times."
 

 While the Trooper traveled towards Jacksonville in response to the notification from dispatch, the informant flagged him down. The informant told the Trooper that the vehicle in question, although no longer visible, had just passed through the intersection on U.S. 258 heading towards Richlands. The Trooper proceeded through the intersection on U.S. 258 towards Richlands, stopping Defendant's vehicle within approximately one-tenth of a mile from the intersection. At some point, the vehicle in question was described as a "gray Ford passenger vehicle[,]"
 
 [1]
 
 however it is unclear whether the Trooper was given this description before or after he stopped Defendant. Defendant was arrested and charged with driving while impaired, and careless and reckless driving.
 

 Prior to trial, Defendant filed a motion to suppress the evidence seized as a result of Defendant being stopped by the Trooper. On 9 June 2016, Onslow County District Court held a hearing on this motion, which claimed the evidence obtained by the stop should be suppressed because the Trooper lacked the requisite reasonable articulable suspicion to stop Defendant. The District Court denied the motion to suppress. Subsequently, Defendant was convicted of driving while intoxicated, and reckless and careless driving.
 

 Defendant appealed to Superior Court, which held a hearing on Defendant's motion to suppress on 15 September 2016. After taking evidence and hearing arguments, the Superior Court determined the Trooper lacked the reasonable articulable suspicion required to make
 
 *830
 
 the stop, and granted the motion to suppress in open court. That same day, the trial court entered a written order stating the motion was allowed, and directing Defendant's counsel to prepare an order. The State gave oral notice of appeal after the trial court announced its decision, and then gave written notice of appeal on 22 September 2016, once the trial court filed its 15 September 2016 written order. The trial court entered the written order prepared by Defendant's counsel, as directed in the 15 September 2016 order, on 31 October 2016.
 

 Analysis
 

 The State argues that the trial court erred: (1) by entering an order on 31 October 2016; and (2) by granting Defendant's motion to suppress. We disagree.
 

 I. Authority to Enter the 31 October 2016 Order
 

 The State maintains that our Court should base our review solely on the 15 September 2016 order, arguing the trial court lacked jurisdiction to enter the 31 October 2016 written order because the State gave its notice of appeal prior to that date. We disagree and review the 31 October 2016 order because "our appellate courts have repeatedly held that a delay in the entry of findings of fact and conclusions of law does not amount to prejudicial error."
 

 *329
 

 State v. Lippard
 
 ,
 
 152 N.C. App. 564
 
 , 571,
 
 568 S.E.2d 657
 
 , 662 (2002) (citing
 
 State v. Horner
 
 ,
 
 310 N.C. 274
 
 , 279,
 
 311 S.E.2d 281
 
 , 285 (1984) ).
 

 The State relies on
 
 State v. Grundler
 
 ,
 
 251 N.C. 177
 
 ,
 
 111 S.E.2d 1
 
 (1959) to support its argument that the trial court did not have jurisdiction to enter the 31 October 2016 order, contending that once the oral and written notices of appeal are given, the trial court is without further authority to make orders
 
 affecting the merits
 
 of the case effective immediately.
 
 See
 

 id.
 
 at 185,
 
 111 S.E.2d at 7
 
 (explaining that "when appeal entries are noted, the appeal becomes" instantly effective, and the Superior Court no longer has the authority "to make orders affecting the merits of the case"). However,
 
 Grundler
 
 does not control this case because the 31 October 2016 order was not a new order
 
 affecting the merits
 
 , but, rather, is a chronicle of the findings and conclusions decided at the hearing. The 15 September 2016 order, which reads: "J. Miller to prepare order[,]" specifically contemplates this later entry of the 31 October 2016 order, which was intended to record the findings and conclusions decided at the 15 September 2016 hearing, not to affect the merits. As such, we reject the contentions of the State and review the 31 October 2016 order.
 

 *831
 

 II. Motion to Suppress
 

 The State argues that the trial court erred in granting Defendant's motion to suppress because: (1) several of the findings of fact are not supported by competent evidence; and (2) the findings of fact do not support the conclusions of law. We disagree. The findings of fact are based on competent evidence and support the conclusions of law.
 

 A.
 
 Standard of Review
 

 When reviewing an order granting a motion to suppress, this Court "is strictly limited to determining whether the trial judge's underlying findings of facts are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982).
 

 B.
 
 Findings of Fact
 

 The State challenges whether there was competent evidence to support the findings of fact as follows.
 

 i) Findings of Fact 1 and 3, Conclusion of Law 6
 

 The State contests: (1) the part of finding of fact 1 that states "[a]t what point the radio dispatcher forwarded the information about the description of the vehicle and the license plate number is unclear from the testimony[;]" (2) the part of finding of fact 3 that states "the State offered no evidence that [the Trooper] received any information as to the tag number of the vehicle in question until after [the Trooper] stopped [Defendant's] vehicle[;]" and (3) the part of conclusion of law 6
 
 [2]
 
 that states "the State has failed to produce evidence that [the Trooper] had the license plate of [D]efendant's vehicle before making a stop in this case[.]" The State argues these findings of fact are unsupported by competent evidence because the Trooper testified he received the license plate number from dispatch before making the stop and the trial court found the Trooper credible. We disagree.
 

 The Trooper gave conflicting testimony as to whether or not he had the license plate number at the time of the stop. According to finding of
 
 *832
 
 fact 6, which is unchallenged, the Trooper testified in District Court that he did not remember whether he had the license plate number, and then called communications the day before his 15 September 2016 Superior Court testimony to check and confirm whether "that information was relayed out." During his testimony in Superior Court, the Trooper again testified that he did not recall if he "remembered the full tag or not, at the time" of the stop, and further stated
 
 *330
 
 that he only recorded the tag number "on the citation, after the fact." The fact that the trial court observed in open court that the witness was credible does not bind its findings of fact as it relates to the witness's recollection of past events. This testimony provides competent evidence to support the findings related to when the radio dispatcher forwarded the information about Defendant's license plate number.
 

 ii) Findings of Fact 4 and 7
 

 The State next contests: the part of finding of fact 4 that states "[a]t some point the vehicle was described as a grey Ford passenger vehicle, but the State offered no evidence as to when the vehicle was so described[;]" and the part of finding of fact 7 that states "the only mention of the color of the vehicle was in the witness statements, ... written after [Defendant's] vehicle was stopped." The State argues these findings of fact are unsupported by competent evidence because the Trooper testified that the informant told him the vehicle was a grey Ford passenger vehicle when she flagged him down, and he may have had the information that the car was grey before he stopped Defendant. We disagree.
 

 During his testimony, the Trooper admitted that he only knew the color of the vehicle from the witness statements. Further, the Trooper admitted that the witness statements were written after the stop, and he "may or may not" have had the information prior to the stop. Overall, the Trooper was unclear as to what description of the vehicle he had at the time of the stop. At first, during direct examination, he claimed to have been looking for a Ford Taurus. When opposing counsel took issue with this description, the Trooper changed his testimony to say he only had information that the vehicle was a "gray Ford passenger vehicle." This conflicting testimony presents competent evidence that the State failed to show when and to what extent the Trooper was aware of the description of the vehicle.
 

 iii) Finding of Fact 13
 

 The State next challenges whether there was competent evidence to support finding of fact 13 that, at the time of the stop, the Trooper had no particular information as to what vehicle he was looking for except
 
 *833
 
 that it was a grey Ford. The State argues the Trooper did have particular information as to what vehicle he was looking for, claiming he knew the model and the license plate number of the vehicle. As discussed above, the Trooper gave conflicting testimony both as to whether or not he had the license plate number at the time of the stop, and as to whether he knew the model of the car. As there was competent evidence supporting the trial court's findings of fact 1, 3, 4, and 7, there is also competent evidence to support finding of fact 13 that there was no particular information about the vehicle except that it was a grey Ford.
 

 C.
 
 Conclusions of Law
 

 The State argues that the findings of fact do not support the conclusions of law. We disagree.
 
 [3]
 

 The State challenges the following conclusions of law:
 

 1. At the time that [the Trooper] stopped [Defendant's] vehicle he lacked any reasonable, articulable suspicion that [Defendant] was engaged in any unlawful activity, since he lacked any information that particularized [Defendant's] vehicle as the one that had been complained about in Hubert earlier that day or complained about by the roadside witnesses.
 

 2. The State has advanced
 
 State v. Maready
 
 ,
 
 362 N.C. 614
 
 ,
 
 669 S.E.2d 564
 
 (2008), as authority for its position that [the Trooper's] stop of [Defendant] was lawful. Upon the court's review of
 
 State v. Maready
 
 , it is obvious that prior to the stop the deputies saw the defendant staggering, obviously intoxicated, across the roadway,
 
 *331
 
 and a driver behind Maready's vehicle told them that Maready had been driving erratically, running stop signs and stop lights. Furthermore, he specifically pointed out the vehicle as being the suspected vehicle.
 

 3. In this case noone [sic] specifically pointed out [Defendant's] vehicle as being the one that was reported as having been observed or reported driving unlawfully. Furthermore, unlike the case in
 
 Maready
 
 , the State
 
 *834
 
 Trooper here did not observe the driver do anything, nor did he observe the vehicle being driven in any erratic or any other suspicious way.
 

 4. The State further relied upon
 
 State v. Nelson
 
 , No. COA13-1355,
 
 235 N.C.App. 219
 
 ,
 
 2014 WL 3510586
 
 (unpublished 2014), but that case is distinguishable from this one because the tipster in question "flagged [the officer] down and directed his attention to the pickup truck, which was exciting [
 
 sic
 
 ] the parking lot." In that case then the suspected vehicle was specifically identified. Here the evidence was that [Defendant's] vehicle was never specifically pointed out to the Trooper prior to him making the stop.
 

 5. In
 
 State v. Hudgins
 
 ,
 
 195 N.C. App. 430
 
 ,
 
 672 S.E.2d 717
 
 (2009) there again was no question at the time of the stop that the vehicle stopped was the vehicle that had been complained about. The officer in question had advised the dispatch to direct the caller to drive to Market Street so he could intercept them. Officer Pamenteri proceeded to Market Street where he observed vehicles matching the description given by the caller stopped at a red light. There was in that case no question as to the particular vehicle or person to be seized.
 

 6. In
 
 Navarette v. California
 
 , --- U.S. ----,
 
 134 S.Ct. 1683
 
 ,
 
 188 L.Ed.2d 680
 
 (2014), the officer making the stop had the license plate number of the pickup truck before he made the stop of the vehicle. Here the State has failed to produce evidence that [the Trooper] had the license plate of [D]efendant's vehicle before making a stop in this case, and the court further notes and finds as a fact that [the Trooper], while he testified that he found a vehicle that matched that tag number, admitted that in the trial in District Court he did not remember that dispatch had given out a tag or a description of the vehicle "from our communications" and that he had called his communications the day before the hearing and learned that that information was relayed out. "It was just from my memory from District Court that I didn't remember that that happened."
 

 7. Based upon the totality of the circumstances the court concludes that the State failed to carry its burden of demonstrating that [the Trooper] was looking for any
 
 *835
 
 vehicle that was "particularly described" as the Fourth Amendment and the cases thereunder require, and that the stop of [D]efendant's vehicle and the fruits thereof must be suppressed.
 

 The State contends the trial court's conclusions of law are in error because of the conclusion that the Trooper lacked reasonable suspicion to stop Defendant. Specifically, the State argues the conclusions cannot be supported on the ground that the informant's tip was not sufficiently reliable. We disagree, because the tip did not have sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop of the vehicle driven by Defendant.
 

 "[T]o conduct an investigatory warrantless stop and detention of an individual, a police officer must have reasonable suspicion, grounded in articulable and objective facts, that the individual is engaged in criminal activity."
 
 State v. Hudgins
 
 ,
 
 195 N.C. App. 430
 
 , 433,
 
 672 S.E.2d 717
 
 , 719 (2009) (citation omitted). "[I]n determining whether a reasonable suspicion exists[,]" we consider the totality of these circumstances,
 

 id.
 

 at 720
 
 ,
 
 672 S.E.2d at 720
 
 (quotation omitted), including "the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training."
 
 State v. Barnard,
 

 362 N.C. 244
 
 , 247,
 
 658 S.E.2d 643
 
 , 645 (quotation and citations omitted). We do not consider information that he later learns; "reasonable suspicion must arise from the officer's knowledge prior to the time of the stop."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 *332
 
 "When police act on the basis of an informant's tip, the indicia of the tip's reliability are certainly among the circumstances that must be considered in determining whether reasonable suspicion exists."
 
 State v. Maready
 
 ,
 
 362 N.C. 614
 
 , 619,
 
 669 S.E.2d 564
 
 , 567 (2008). Potential indicia include "all the facts known to the officers from personal observation[.]"
 

 Id.
 

 at 619
 
 ,
 
 669 S.E.2d at 567
 
 (quotation omitted). In
 
 Maready
 
 , the officers observed an intoxicated man enter a vehicle. A nearby second vehicle's driver, who had also been in a position to see the intoxicated man enter the first vehicle, then approached the officers and, while able to point out the first vehicle, told the officers that the first vehicle had been driving erratically, running stop signs and stop lights.
 

 Id.
 

 at 620
 
 ,
 
 669 S.E.2d at 568
 
 .
 

 Here, the informant's tip has less indicia of credibility than the tip in
 
 Maready
 
 . While the informant was not anonymous, he was unable to specifically point out Defendant's vehicle as being the one driving unlawfully, as it was out of sight, and the Trooper did not observe Defendant's
 
 *836
 
 vehicle being driven in a suspicious or erratic fashion. Moreover, as addressed in the findings of fact, it is unknown whether the Trooper had the license plate number before or after the stop, and, further, we do not know whether he had any vehicle description besides a "gray Ford passenger vehicle" to specify his search.
 

 The State also challenges the conclusions of law that distinguish
 
 State v. Hudgins
 
 ,
 
 195 N.C. App. 430
 
 ,
 
 672 S.E.2d 717
 
 (2009) and
 
 State v. Nelson
 
 , No. COA13-1355,
 
 235 N.C. App. 219
 
 ,
 
 763 S.E.2d 339
 
 ,
 
 2014 WL 3510586
 
 (N.C. Ct. App. July 15, 2014) (unpublished) from the instant case. Similar to
 
 Maready
 
 , in both
 
 Hudgins
 
 and
 
 Nelson
 
 , the officers had reasonable suspicion to stop an individual where an informant's tip had sufficient indicia of reliability to, in light of the totality of the circumstances, create reasonable suspicion. In
 
 Hudgins
 
 and
 
 Nelson
 
 , the tip provided enough information that there was no doubt as to which particular vehicle each informant reported.
 
 Hudgins
 
 ,
 
 195 N.C. App. at 431
 
 ,
 
 672 S.E.2d at
 
 718 ;
 
 Nelson
 
 ,
 
 2014 WL 3510586
 
 *7. In contrast, here, the informant's ambiguous description did not specify a particular vehicle. There were no other circumstances that enabled the Trooper to further corroborate the tip; the Trooper did not testify that he witnessed Defendant's vehicle exhibit any behavior similar to the erratic driving described by the informant. Thus, given the totality of the circumstances, this informant's tip did not have enough indicia of credibility to create reasonable suspicion for the Trooper to stop Defendant's vehicle.
 

 Conclusion
 

 For the foregoing reasons, we hold that the trial court had jurisdiction to enter the 31 October 2016 order. The findings of fact in that order were based on competent evidence, and support the conclusions of law.
 

 AFFIRMED
 

 Judges HUNTER, JR. and DAVIS concur.
 

 [1]
 

 The spelling of gray is a grey area.
 
 See generally
 
 Merriam-Webster's Collegiate Dictionary (11th ed. 2004) (listing grey as a variant of gray). We note the trial court's transcript uses "gray" and order uses "grey" to describe the same color, causing some inconsistency in the spelling of "grey" in this opinion.
 

 [2]
 

 We review the portion of this conclusion of law quoted here while reviewing the findings of fact both: (1) to address the State's argument; and (2) because it describes a finding of fact, not a conclusion of law.
 
 See
 

 Rolan v. N.C. Dep't of Agric. & Consumer Servs
 
 .,
 
 233 N.C. App. 371
 
 , 380,
 
 756 S.E.2d 788
 
 , 794 (2014) ("As with separate findings of fact and conclusions of law, the factual elements of a mixed finding must be supported by competent evidence, and the legal elements must, in turn, be supported by the facts.") (citation omitted).
 

 [3]
 

 We note that in reviewing these conclusions of law for whether the order's findings of fact support the conclusions, we are bound by the order's findings of fact because, as discussed above, they are supported by competent evidence.
 
 See
 

 Cooke
 
 ,
 
 306 N.C. at 134
 
 ,
 
 291 S.E.2d at 619
 
 (explaining that when "the trial judge's underlying findings of facts are supported by competent evidence, ... they are conclusively binding on appeal").