STATE OF NORTH CAROLINA v. TRAVIS KATRELL McCORD

No. COA02-345

(Filed 1 July 2003)

**Jury— selection—peremptory challenges—*Batson* hearing— nondiscriminatory reasons**

The trial court did not err in a first-degree murder, first-degree rape, first-degree kidnapping, robbery with a firearm, and first-degree burglary case by failing to find after a *Batson* hearing that the State engaged in intentional racial discrimination when exercising its peremptory challenges to strike two prospective African-American jurors, because: (1) the record contains no evidence the State made any racially motivated statements or asked any racially motivated questions during voir dire, and one African-American juror served on the panel; (2) there was no evidence of historical discrimination; (3) defendant failed to point to any white juror who possessed the three qualities relied upon to dismiss one of the prospective jurors including youth, marital status, and employment by an unfamiliar business; (4) the State also used a peremptory challenge to excuse a prospective white juror who was a similar age to the defendants, was single, and worked for a company the prosecutor did not know; (5) defendant did not offer any evidence that would suggest that the State's concerns about the other prospective juror's familiarity and relationship with a codefendant was pretextual; (6) the prosecutor accepted one African-American juror while it still had an unused peremp-

tory challenge; and (7) five of the State's witnesses, including its key witness, were African-American.

Appeal by defendant from judgment entered 6 September 2001 by Judge Richard L. Doughton in Cleveland County Superior Court. Originally scheduled to be heard in the Court of Appeals on 30 October 2002. Reassigned to this panel by order dated 16 January 2003 of the Chief Judge of the North Carolina Court of Appeals.

*Attorney General Roy Cooper, by Assistant Attorney General John G. Barnwell, for the State.*

*Haakon Thorsen, for defendant-appellant.*

GEER, Judge.

On this appeal, we address the trial court's ruling after a *Batson* hearing. Defendant argues that the trial court erred in failing to find that the State engaged in intentional racial discrimination when exercising its peremptory challenges to strike two prospective jurors. We affirm.

On 5 December 2000, this Court addressed defendant's appeal of judgments finding him guilty of first-degree murder, first-degree rape, first-degree kidnapping, robbery with a firearm, and first-degree burglary. The detailed facts of this case are set out in that opinion. *See State v. McCord,* 140 N.C. App. 634, 538 S.E.2d 633 (2000), *disc. review denied,* 353 N.C. 392, 547 S.E.2d 33 (2001) (*"McCord I"*).

Defendant, who is African-American, was indicted together with three other individuals, one of whom was African-American and two of whom were white. The victim was white. At defendant's trial, the State used peremptory challenges to excuse four prospective African-American jurors, including Loretta Clemmons, Vernon Pressley, Itaska White, and Patricia Hartgrove. One additional prospective African-American juror was excused for cause. The jury was ultimately composed of eleven white jurors and one African-American juror. The African-American juror became the foreperson of the jury.

During the jury *voir dire,* defendant objected on the grounds of *Batson v. Kentucky,* 476 U.S. 79, 90 L. Ed. 2d 69 (1986) to the excusal of Clemmons and Pressley. Prior to determining whether defendant had stated a *prima facie* case of discrimination, the trial court allowed the prosecutor to state his reasons for excusing the two

jurors. With respect to Pressley, the State relied on the fact that he did not own his own home, he had not lived in his residence for more than five years, and he knew a co-defendant. As for Clemmons, the State argued that she knew a co-defendant and had previously been charged with aiding and abetting a murder. The trial court found that these reasons were legitimate grounds unrelated to race and denied defendant's *Batson* motion.

Later during *voir dire*, when the State excused White and Hartgrove, defendant again objected based on *Batson*. Without requiring the State to articulate reasons for excusing White and Hartgrove, the trial court overruled defendant's objection on the grounds that defendant had not made a *prima facie* showing of a pattern of racial discrimination.

On appeal, this Court found no error in defendant's trial with the exception of the trial court's denial of defendant's *Batson* challenge as to White and Hartgrove. With respect to Pressley and Clemmons, the Court held that the trial court's denial of the *Batson* motion was not clearly erroneous. On turning to White and Hartgrove, however, the Court concluded that evidence that the victim was white and the defendant was African-American, that the State used its peremptory strikes to excuse four of the six African-American jurors in the jury pool, and that the jury ultimately had only a single African-American juror was sufficient to raise a *prima facie* inference of intentional discrimination by the State in its use of its peremptory challenges. *McCord I*, 140 N.C. App. at 653, 538 S.E.2d at 645. The Court, therefore, ordered that the case be remanded for a *Batson* hearing limited to the State's excusal of White and Hartgrove:

> [A] judge presiding over a criminal session shall hold a hearing and provide the State with an opportunity to give a race-neutral reason for striking White and Hartgrove. If the trial court finds the State's explanation is not race-neutral, Defendant is entitled to a new trial. If the trial court finds the State's explanation is race-neutral, Defendant shall be given the opportunity to demonstrate that the explanation was a mere pretext. If Defendant meets his ultimate burden of proving intentional discrimination, he is entitled to a new trial. If he does not meet this burden, the trial court will order commitment to issue in accordance with the judgment appealed from and dated 7 April 1999.

*Id.* at 654, 538 S.E.2d at 645-46.

STATE v. McCORD

[158 N.C. App. 693 (2003)]

On 14 May 2001, a *Batson* hearing was conducted by a new superior court judge rather than the judge who had presided over the original trial. At this hearing, the prosecutor, William C. Young, testified and was cross-examined as to his reasons for using peremptory strikes to excuse prospective jurors White and Hartgrove. In addition, the parties jointly submitted the transcript of the jury *voir dire* in the original trial and defendant offered a jury selection form and jury panel notes. Defendant presented no other evidence.

After reviewing the evidence and briefs and hearing argument, the trial court found that the State excused prospective juror White because she was single and the district attorney preferred to have married jurors; because she was only 21 and the district attorney did not want jurors of the same age as defendant and the three co-defendants; because she was employed at a business with which the district attorney was unfamiliar; and because White would not make eye contact. The court found that the State excused Hartgrove because she was divorced; because she had heard about the case; because she knew the family of a co-defendant; and because she was related to one of the co-defendants. The court then found that the reasons articulated by the State were race-neutral and believable and not a pretext for discrimination. Defendant challenges those findings in this appeal.

In *Batson*, the United States Supreme Court set forth a three-step inquiry to be followed by a trial court in determining the constitutionality of a State's use of a peremptory challenge. The North Carolina Supreme Court has adopted this test. *State v. Barden*, 356 N.C. 316, 342, 572 S.E.2d 108, 126 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003). Under *Batson*, the defendant must first make a *prima facie* showing that the State exercised a peremptory challenge on the basis of race. *Id.* If defendant meets this burden, then the burden shifts to the State "to offer a facially valid and race-neutral rationale for the peremptory challenge or challenges." *Id.* Finally, the trial court determines whether the defendant has carried his ultimate burden of proving purposeful discrimination. *Id.*

Even when the State articulates facially race-neutral rationales for striking African-American jurors, defendant may rebut this showing by offering evidence of pretext: that the reasons presented "pertained just as well to some white jurors who were not challenged and who did serve on the jury." *Miller-El v. Cockrell*, 537 U.S. 322, 343, 154 L. Ed. 2d 931, 954, 123 S. Ct. 1029, 1043 (2003). In other words, "even though the prosecution's reasons for striking

African-American members of the venire appear race neutral, the application of these rationales to the venire might have been selective and based on racial considerations." *Id.* Additionally, defendant may rely upon evidence such as statistics, disparate questioning, comments or conduct of the district attorney suggestive of discrimination, or past racial discrimination by the district attorney's office. *Id.* at 342-43, 154 L. Ed. 2d at 953-54, 123 S. Ct. at 1042-43. The trial court must weigh defendant's evidence against the State's articulated reasons to determine whether defendant has proven that the State engaged in racial discrimination.

The issue of discrimination is a question of fact and the trial court's ruling will be upheld unless the appellate court is convinced that the trial court's decision is "clearly erroneous." *McCord I*, 140 N.C. App. at 652, 538 S.E.2d at 644. Deference to the trial court is appropriate because a critical aspect of the determination is an assessment of credibility. *State v. Nicholson*, 355 N.C. 1, 21, 558 S.E.2d 109, 125, *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71, 123 S. Ct. 178 (2002). While the trial judge presiding over the *Batson* hearing in this case was not the same judge who presided over jury selection, he still had the ability to observe the testimony of the prosecutor firsthand.

Nevertheless, as the United States Supreme Court has stressed, "deference does not imply abandonment or abdication of judicial review." *Miller-El*, 537 U.S. at 340, 154 L. Ed. 2d at 952, 123 S. Ct. at 1041. After, however, a thorough review of the record and consideration of this Court's prior opinion, we cannot find that the trial court's ruling was clearly erroneous as to either White or Hartgrove.

This Court has already found that "the record contains no evidence the State made any racially motivated statements or asked any racially motivated questions during *voir dire*, and the record shows one black juror served on the panel." *McCord I*, 140 N.C. App. at 652, 538 S.E.2d at 645. There is also no evidence of historical discrimination. Instead, defendant relied primarily on evidence that he argues demonstrates pretext.

As to White, Young testified that his reasons for using a peremptory strike to excuse her from the jury pool were that she was "a single female of the . . . approximate same age, of the participants [in the crime]; she was employed at a place that I had never heard of; and I could not make . . . eye contact[] with her." Young explained that he did not want any unmarried persons to serve on the jury in this case because the victim and all the defendants were young and single and

he did not want jurors who could relate to the defendants. Defendant contends that the trial court should have found this explanation pretextual because Young only asked two jurors (one of whom was white) their age, did not object to other white jurors who were unmarried, and reacted differently toward white jurors who worked at unfamiliar businesses. Young testified that he only asked the age of those prospective jurors who appeared to be similar in age to the defendants. Defendant has not challenged this testimony. In addition, defendant did not point to any white juror who possessed all three qualities relied upon by Young—youth, unmarried status, and employment by an unfamiliar business. The State, on the other hand, points to the fact that it used a peremptory challenge to excuse a prospective white juror, who like White was a similar age to the defendants, was single, and worked for a company that Young did not know.

As to Hartgrove, Young testified that not only was Hartgrove divorced and had heard about the case prior to being called for jury duty, "but she knew Ruff, a co-Defendant; she was related to Ruff's grandmother; and she knew his aunts and uncles." Young explained, "I was not going to leave a family member of Mr. Ruff on the jury and I exercised a peremptory challenge." Defendant reiterates his argument that unmarried white jurors were accepted and points to white jurors who had also heard about the case. He does not, however, offer any evidence that would suggest that the State's concern about Hartgrove's familiarity and relationship with a co-defendant was pretextual. See McCord I, 140 N.C. App. at 652-53, 538 S.E.2d at 645 (Pressley and Clemmons properly excused in part because they knew a co-defendant).

In addition, the State points out that Young accepted one African-American juror while it still had an unused peremptory challenge. See State v. Jackson, 322 N.C. 251, 255, 368 S.E.2d 838, 840 (1988) (trial court could consider fact that State left an African-American on the jury when it still had three peremptory challenges left), cert. denied, 490 U.S. 1110, 104 L. Ed. 2d 1027 (1989). Further, five of the State's witnesses—including its key eye witness—were African-American, a fact that undercuts the claim that the State was motivated to discriminate. See, e.g., Nicholson, 355 N.C. at 22, 558 S.E.2d at 125 (noting that "[s]everal of the state's key witnesses were also African-American"); State v. Williams, 339 N.C. 1, 17-18, 452 S.E.2d 245, 255 (1994) ("That a black witness played such a key role in defendant's prosecution substantially undercuts any incentive on the prosecu-

tor's part to remove blacks on the basis of their race."), *cert. denied*, 516 U.S. 833, 133 L. Ed. 2d 61 (1995), and *overruled on other grounds*, *State v. Warren*, 347 N.C. 309, 492 S.E.2d 609 (1997).

As stated above, this Court's duty is to examine the record to determine whether the trial court's ruling was clearly erroneous. After a careful review of the record and our case law on *Batson* challenges, we are unable to conclude that the trial court's ruling was clearly erroneous.

Affirmed.

Judges McGEE and HUDSON concur.