STATE OF NORTH CAROLINA v. JOSE GUADALUPE SALINAS

No. COA10-1563

(Filed 16 August 2011)

**Search and Seizure—vehicular stop—erroneous standard applied—reversed and remanded**

The trial court erred in a seatbelt violation and possession of drug paraphernalia case by ruling that the stop of defendant's car was unconstitutional. The trial court's order indicated it applied the wrong standard in determining that the stop was unconstitutional. The ruling was reversed and remanded to the trial court for reevaluation of the evidence presented at the hearing, pursuant to the correct standard.

Appeal by the State from order entered 29 September 2010 by Judge Patrice A. Hinnant in Superior Court, Rockingham County. Heard in the Court of Appeals 7 June 2011.

*Attorney General Roy Cooper, by Assistant Attorney General Jess D. Mekeel, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for Defendant-Appellee.*

McGEE, Judge.

The State's evidence tends to show that the Reidsville 911 center received an anonymous call at approximately 10:00 a.m. on 13 March 2009, reporting that a small white car (the vehicle) was being driven erratically in the vicinity of Way Street in Reidsville. The caller reported that the vehicle had pulled into a Food Lion parking lot on Way Street. Officer Daniel Velasquez (Officer Velasquez) and Officer Linwood Hampshire (Officer Hampshire) (together, the Officers) of the Reidsville Police Department were dispatched to investigate. At approximately 10:15 a.m., the Officers observed a small white car driving in the Food Lion parking lot. The vehicle began to exit the Food lion parking lot and the driver, later identified as Defendant, drove up onto a curb near the exit, backed up, pulled up to a stop sign, rolled back, then drove up to the stop sign again. When Defendant finally pulled out of the parking lot, he made a wide right-hand turn northbound onto Way Street, a four-lane road, and part of the vehicle

crossed the center line, encroaching on one of the southbound lanes of traffic.

The vehicle passed the Officers' cruiser traveling approximately fifteen miles per hour. Both Officers testified that Defendant was not wearing a seatbelt. The Officers then pulled behind Defendant, activated the blue lights on their vehicle, and initiated a stop. Based upon Defendant's physical appearance, conduct, and a strong odor of burnt marijuana, Officer Hampshire eventually searched the vehicle and discovered drug paraphernalia. Defendant was arrested and read his *Miranda* rights. Defendant was taken to the police station, then to a hospital where he had blood drawn. Defendant's behavior indicated he was. impaired and he made incriminating statements to the Officers during this process. Defendant was cited for a seatbelt violation, and was also charged with possession of drug paraphernalia.

Defendant filed a motion to suppress on 23 November 2009. Along with Defendant's motion to. suppress, he also filed an affidavit in support of his motion to suppress, in which he averred that he was wearing a seatbelt when he was stopped by the Officers. Defendant's motion was heard on 18 August 2010 and granted by the trial court by an order filed on 29 September 2010, in which the court ruled that the stop of Defendant's vehicle was unconstitutional, and that all evidence recovered based upon the stop be suppressed. The State appeals.

I.

The State contends in its first argument that the trial court erred in ruling that the stop was unconstitutional. Because we determine that the incorrect standard was applied in this matter, we agree.

At the hearing on Defendant's motion to suppress, the State articulated the correct standard for investigatory stops—reasonable suspicion. However, at times during the hearing, both the State and Defendant incorrectly spoke in terms of whether "probable cause" existed justifying the stop. In its order, the trial court concluded: "That there was insufficient evidence for probable cause to stop and arrest [Defendant]." "This Court has recently confirmed that 'reasonable suspicion is the necessary standard for traffic stops.' " *State v. Maready*, 362 N.C. 614, 618, 669 S.E.2d 564, 567 (2008) (citation omitted).

"Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' Only ' "some minimal level of objective justification" ' is required. This Court has determined that the rea-

sonable suspicion standard requires that '[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.' Moreover, '[a] court must consider "the totality of the circumstances—the whole picture" in determining whether a reasonable suspicion' exists."

*Id.* (citing *State v. Barnard*, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (2008) (citations omitted)). Because the trial court's order indicates it applied the wrong standard in determining that the stop was unconstitutional, we reverse and remand to the trial court for reevaluation of the evidence presented at the hearing, pursuant to the correct standard, and for entry of a new order granting or denying Defendant's motion to suppress, based upon application of the correct standard. *State v. McKinney*, 361 N.C. 53, 64-65, 637 S.E.2d 868, 876 (2006) (" '[W]e believe it is appropriate to hold that the conclusion should, in the first instance, be made by the trial court.' This rule recognizes the 'trial courts' "institutional advantages" over appellate courts in the "application of facts to fact-dependent legal standards." ' Thus, we decline to speculate as to the probable outcome in the instant case had the trial court [conducted its analysis pursuant to the correct standard]. We therefore should afford the trial court an opportunity to . . . [apply] the appropriate legal standard.").

The State argues that our Court should make a determination, based upon the evidence presented at the suppression hearing, that a reasonable suspicion justifying the stop existed as a matter of law. The State argues that the evidence at the hearing was uncontroverted. We disagree. *Id.*

This Court has addressed the argument by the State succinctly in an unpublished opinion that we find persuasive:

[the d]efendant's argument is that since he was the only person who testified, and that since he testified that his actions were not willful, there was no evidence that his actions were willful. This argument misapprehends the role of the trial judge [sitting as the finder of fact]. The judge's role is to hear the evidence, determine the credibility of witnesses, and determine the weight to be given to the evidence presented. It is not to accept uncritically the testimony of witnesses, whether for the State or for the defendant. In this case, there are readily apparent inconsistencies in [the] defendant's testimony which cast serious doubt upon his credibility.

STATE v. SALINAS

[214 N.C. App. 408 (2011)]

*State v. Huntley*, 189 N.C. App. 532, 659 S.E.2d 490, 2008 N.C. App. LEXIS 622, 4-5 (2008) (unpublished) (citation omitted); *State v. Watkins*, 120 N.C. App. 804, 808, 463 S.E.2d 802, 805 (1995); *see also State v. Icard*, 363 N.C. 303, 312, 677 S.E.2d 822,.828-29 (2009) (standard set forth in dissent by Justice Newby) (citations omitted); *State v. Darrow*, 83 N.C. App. 647, 649, 351 S.E.2d 138, 140 (1986) (issues of credibility are for the trial court to decide when sitting without a jury (citing *State v. Booker*, 309 N.C. 446, 306 S.E.2d 771 (1983))); *State v. Durham*, ___, N.C. App. ___, ___ S.E.2d ___, 2011 N.C. App. LEXIS 749, 7 (2011) (unpublished) ("[W]e defer to the trial court's assessment of [the officer's] credibility and its resolution of any inconsistencies in his testimony. Accordingly, we are bound by the trial court's finding [based upon that credibility determination]."). We find the reasoning in *Huntley* both sound and legally correct. Furthermore,

> an appellate court accords great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred. As Justice Higgins stated, in *State v. Smith*, 278 N.C. 36, 41, 178 S.E.2d 597, 601, *cert. denied*, 403 U.S. 934, 91 S. Ct. 2266, 29 L. Ed. 2d 715 (1971), the trial judge:

> sees the witnesses, observes [their] demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth. The appellate court is much less favored because it sees only a cold, written record. Hence the findings of the trial judge are, and properly should be, conclusive on appeal if they are supported by the evidence.

*State v. Cooke*, 306 N.C. 132, 134-35, 291 S.E.2d 618, 619-20 (1982). This duty of the trial court applies with equal force whether its weight and credibility determinations are made in favor of the State, or in favor of a defendant. "Where the [trial court's] findings of fact support [its] conclusions of law, such findings and conclusions are binding upon us on appeal." *State v. Wynne*, 329 N.C. 507, 522, 406 S.E.2d 812, 820 (1991) (citation omitted).

In the present case, the trial court found in its order that "there were large discrepancies between the testimony of Officer Velasquez and Officer Hampshire[.]" The discrepancies found by the trial court included whether Defendant had been given a physical dexterity test,

Defendant's attire, the description of the vehicle, the specific manner of Defendant's driving when pulling out of the Food Lion parking lot, Defendant's turning onto Way Street, Defendant's pulling over once the stop had been initiated, and Defendant's physical movements and condition after arrest. The trial court found that these discrepancies went to "credibility as to the basis of the stop of [Defendant] from the Court's point of view[.]" Based upon its credibility determination, the trial court stated:

All the discrepancies in the testimony of the officers caused the Court to make the finding of fact: that [Defendant] did, in fact, have his seatbelt on as alleged in his affidavit; that the real basis for the stop of [Defendant] on this occasion was an unsubstantiated report from the police dispatcher.

At the hearing, the following colloquy occurred between the State and Officer Hampshire:

Q. And why did you and Detective Velasquez decide to stop the vehicle?

A. Based on his driving, trying to get out of the parking lot and get onto Way Street. I've seen numerous cars drive up and down that ramp without having to—driving onto the curb and roll back that far and take three lanes to turn. That was what we considered to be signs that he was impaired or that there was something wrong with him.

Q. Was that the only reason?

A. Yes, ma'am.

Officer Hampshire did not testify that the stop was based upon any observed seatbelt violation, or the anonymous tip relayed through dispatch. Officer Velasquez's testimony makes clear that he was an officer in training, and that Officer Hampshire was his training officer. Officer Velasquez testified that Officer Hampshire was the one making the decisions on 13 March 2009. Officer Hampshire is the officer who signed the citations for the seatbelt violation and for possession of drug paraphernalia on that date.

Because it was Officer Hampshire's decision to stop the vehicle, it was Officer Hampshire's stated justification for the stop that was at issue on Defendant's motion to suppress. The trial court clearly made credibility determinations at the hearing, and concluded that the testimony of the Officers concerning the basis for the stop was lacking

credibility. This credibility determination is the province of the trial court, not this Court on appeal. *Darrow*, 83 N.C. App. at 649, 351 S.E.2d at 140; *State v. McCord*, 158 N.C. App. 693, 697, 582 S.E.2d 33, 35-36 (2003). Although different inferences could have been drawn from the evidence, we are bound by the trial court's credibility determinations. *Id.*; *see also Watkins*, 120 N.C. App. at 808, 463 S.E.2d at 805 ("Although there was testimony which would support contrary findings than those made by the trial court, we are bound by the trial court's determinations of credibility and the weight to be afforded the testimony, absent an abuse of discretion. *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619-20 (1982).").

The State argues that the testimony of Officers Hampshire and Velasquez constituted "uncontroverted evidence unequivocally" demonstrating the existence of a reasonable suspicion to stop Defendant's vehicle, because Defendant did not present evidence at the suppression hearing. The fact that Defendant did not present evidence at the hearing beyond his affidavit does not invalidate the trial court's credibility determinations, and the findings and conclusions that resulted therefrom.

The trial court, however, stated in its order that Officer Hampshire testified that his basis for the stop included the alleged seatbelt violation. The State argues that Defendant's affidavit was not competent evidence for the trial court to consider in finding that Defendant was wearing his seatbelt. In light of the trial court's role as the determiner of credibility, we do not believe this argument is relevant. We note, however, that our Court has apparently treated affidavits as evidence at suppression hearings. *See State v. Mahatha*, 157 N.C. App. 183, 190-97, 578 S.E.2d 617, 622-26 (2003); *State v. Moul*, 95 N.C. App. 644, 646, 383 S.E.2d 429, 431 (1989); *see also State v. Pittman*, 151 N.C. App. 750, 567 S.E.2d 466, 2002 N.C. App. LEXIS 2374, 12-13 (2002) (unpublished opinion).

The State further argues that the trial court erred in finding as fact "that the real basis for the stop of [Defendant] on this occasion was an unsubstantiated report from the police dispatcher." The State contends that the Officers' testimony provided sufficient evidence corroborating the anonymous caller's report of erratic driving. Because the trial court concluded that the Officers' testimony in this regard was lacking in credibility, we cannot hold that the Officers' testimony corroborated the anonymous report as a matter of law. In the present case, it is for the trial court to revisit the evidence pur-

suant to the reasonable suspicion standard and make its ruling on the constitutionality of the stop, including receiving any additional evidence it chooses to receive in the exercise of its discretion, making any necessary credibility determinations.

The dissent argues that we should determine, as a matter of law, that the trial court's findings of fact are sufficient for this Court to find that a reasonable suspicion existed to justify the Officers' stop of Defendant. The dissent relies upon *State v. Styles*, 362 N.C. 412, 665 S.E.2d 438 (2008), for the proposition that our Court may freely "determine if the actions of the police satisfied the appropriate legal standard[,]" noting in *Styles* that the "reasonable suspicion standard [was] applied even though the trial court reviewed for probable cause." However, *Styles* is not informative to the case before us. In *Styles*, the trial court ruled, and this Court affirmed, that probable cause *existed* to stop the defendant. The defendant's motion to suppress was *denied*. Our Supreme Court held that reasonable suspicion, not the heightened standard of probable cause, was the correct standard to apply. It then affirmed the denial of the motion to suppress by holding that the trial court's findings of fact supported its conclusion that the stop was legal—applying the *lesser* standard of reasonable suspicion. *Id. Styles* does not support the proposition that our Court may substitute its judgment for the trial court's when the trial court improperly applied the probable cause standard, *granted* Defendant's motion to suppress, did not make findings of fact that allow us to apply the correct legal standard on appeal, and on remand the trial court might make a different determination under the lesser reasonable suspicion standard.

The dissent suggests that the trial court found as fact that the anonymous caller provided a license plate number for the vehicle allegedly seen being driven erratically, and that Officer Hampshire based his decision to stop Defendant in part on determining that the license plate on Defendant's vehicle matched the one given by the anonymous caller. However, the trial court made no finding of fact concerning the license plate number and Defendant's license plate is not referenced in the 29 September 2010 order. Further, the suppression hearing transcript shows that neither of the Officers testified that Defendant's license plate number was checked against that allegedly given by the anonymous caller before the stop was initiated. The testimony of Officer Hampshire, cited by the dissent, regards alleged observations of a different officer who did not testify at the suppression hearing. Neither Officer Hampshire nor Officer Velasquez

testified that they observed the vehicle parked in the parking lot near the Food Lion.

The dissent correctly states that many of the findings of fact are not findings of fact as far as establishing the validity of the Officers' testimony. The dissent is incorrect, however, in stating that the trial court's findings of fact are improper. For example, under the "Findings of Fact" section in its order, the trial court states: "That the State called as its first witness Daniel Velasquez who was sworn and testified:[.]" The trial court then lists testimony from Officer Velasquez, such as, after the Officers stopped the vehicle, "the vehicle had pulled over to the far right, close to the curb." The trial court's order subsequently states: "That Officer Linwood Hampshire was sworn and testified as follows:[.]" Included in the trial court's findings concerning Officer Hampshire's testimony is that Defendant "stopped his vehicle in the middle of the travel lane several feet from the curb, not all the way over to the curb and this testimony was contrary to the statement of Officer Velasquez who had previously stated that [Defendant] did pull over next to the curb."

The trial court's findings of fact contain both findings as to what the Officers testified, which testimony was not adopted by the trial court as to content, and findings by the trial court concerning its evaluation of the Officers' testimony—e.g. Officer Hampshire's testimony "was contrary to the statement of Officer Velasquez[.]" It is apparent that the trial court did *not* intend to adopt as fact the substance of much of the Officers' testimony because the trial court made credibility determinations in which it questioned the validity of the Officers' testimony.

Following the trial court's findings as to what the Officers' testimony had been, the trial court stated: "That, at the conclusion of Officer Hampshire's testimony [which followed Officer Velasquez's testimony], the [trial court] found as fact:[.]" What follows are the findings of the trial court based upon its weighing of the evidence and its credibility determinations. These findings of fact clearly show the trial court did not adopt as its own findings the substantive testimony of the Officers concerning the facts surrounding the stop. Therefore, based upon the findings of fact made by the trial court, there is no support for the dissent's position that our Court should make a determination as a matter of law that a reasonable suspicion existed to support the stop of Defendant.

Further, as the trial court stated in its findings of fact, Officer Velasquez "testified that there was no reason to stop the vehicle and check it out at the time that the front wheels of the vehicle were up on the curb in the parking lot[.]" Officer Hampshire testified that the decision was made to stop Defendant after Defendant crossed the center lane while turning onto Way Street. The trial court found as fact that the Officers' testimony concerning Defendant's driving was inconsistent. The dissent contends that the discrepancies identified by the trial court were "trivial and immaterial" to the analysis. Identifying discrepancies, however, is not the limit of a trial court's function. The trial court is charged with determining the credibility of the witnesses themselves. If the trial court determines a witness is not credible, we cannot assume the testimony of that witness is factual, and cannot assume that the trial court determined any of the testimony was factual absent findings of fact clearly so stating. As the dissent points out, the trial court's findings *reciting* the testimony of the Officers do not constitute findings of fact supporting the *content* of that testimony.

The cases cited by the dissent in support of its argument did not involve adverse credibility determinations made by the trial court. All but one of the cases cited by the dissent involved appeals based upon the trial courts' *denial* of the defendants' motions to suppress. Appellate courts do not usurp the province of the trial court, weigh the evidence, and make our own credibility determinations based upon the cold record before us. There is nothing in the trial court's order permitting us to hold that the trial court's findings of fact established that the anonymous tip was sufficiently corroborated by the Officers and, therefore, that a reasonable suspicion existed justifying the investigatory stop.

Were we to so hold, we would be

> misapprehend[ing] the role of the trial judge [sitting as the finder of fact]. The judge's role is to hear the evidence, determine the credibility of witnesses, and determine the weight to be given to the evidence presented. It is not to accept uncritically the testimony of witnesses, whether for the State or for the defendant.

*Huntley*, 2008 N.C. App. LEXIS 622, 4-5; *Durham*, 2011 N.C. App. LEXIS 749, 7 ("[W]e defer to the trial court's assessment of [the officer's] credibility and its resolution of any inconsistencies in his testimony. Accordingly, we are bound by the trial court's finding [based

upon that credibility determination].”); *see also* other cases cited above. Upon remand the trial court will be free to clarify its findings and conclusions based upon the evidence before it, its weighing of that evidence, and its determinations of credibility.

In light of our holding above, we need not address the State's additional arguments.

Reversed and remanded.

Judge ERVIN concurs.

Judge McCULLOUGH concurs in part and dissents in part by separate opinion.

McCULLOUGH, Judge, concurring in part and dissenting in part:

The majority opinion holds that the trial court's order suppressing evidence seized by Reidsville Police Department officers from defendant must be reversed as the trial court applied a probable cause standard to the traffic stop at issue in this case. I concur with that part of the majority opinion.

The majority opinion then orders that the case be remanded to the lower court for a new suppression hearing where the proper legal standard of reasonable suspicion shall be applied. From this part of the majority opinion, I respectfully dissent, as I believe that this Court has the capability of reviewing the record to determine if the actions of the police satisfied the appropriate legal standard. *State v. Styles*, 362 N.C. 412, 665 S.E.2d 438 (2008) (reasonable suspicion standard applied even though the trial court reviewed for probable cause). As this Court is able to conduct a *de novo* review without remand, I believe we should address not only the traffic stop, but should also address a number of erroneous evidentiary rulings made by the lower court which may be repeated if the case is remanded for a new hearing.

I believe that a complete review of this case would be possible using the findings that the trial court seems to have made[1] to which we would apply the correct legal analysis so that the erroneous evi-

---

1. "That, at the conclusion of Officer Hampshire's testimony, the Court found as a fact:

v. That the defendant, by way of Affidavit in Support of Motion to Suppress, objected to the stop, search and arrest of the defendant, and maintained that he did have his seatbelt on."

dentiary rulings the trial judge made can be corrected expeditiously. The other "Findings of Fact" made by the lower court are not true "Findings" as most of the findings are merely recitations of testimony. *In re Green*, 67 N.C. App. 501, 505 n.1, 313 S.E.2d 193, 195 n.1 (1984) (purported "finding" which merely states that the witness testified under oath is a recitation of testimony, not a finding of fact). While the trial court made some adverse credibility determinations based on discrepancies in the officer's testimony as to the clothing of defendant, the location of defendant's automobile after the stop was executed, and the proper make of the car, these were trivial and immaterial to the Fourth Amendment analysis, which the court is required to make.

From the findings that were made, it is apparent that the trial court found that an anonymous 911 caller reported following a car that was driving erratically and provided the license plate, color of the car and its current location, that being the Food Lion parking lot just off Way Street in Reidsville. The trial judge also seems to accept as fact that officers responded to the anonymous tip locating defendant's automobile in the parking lot identified by the caller, bearing the license plate provided by the caller, and of the general description and color of the auto described in the call. At the suppression hearing, Officer Hampshire testified as follows:

Q. And what drew your attention to the Defendant?

A. We originally received a 911 phone call from a cell phone caller that was following the vehicle. He said that the vehicle was driving erratically, wasn't able to stay in its lane. He originally described it as a small white car. That was the first call that went out. He was able—the—he was able to get closer to it, and eventually he did put out a—the dispatcher did put out a tag number for the vehicle. The tag number was YSE-6070. The caller advised that the vehicle had stopped and parked in the Food Lion parking lot. Several officers respond—went to that area. The car was found to be parked in that parking lot and it was—nobody was in the vehicle when it was originally found.

(Emphasis added.) The citations issued defendant and which were before the court identify defendant's vehicle as a 1996 Nissan bearing license number YSE-6070. Based on the record before the trial court, there can be no doubt that the automobile stopped by the police was the same vehicle described by the tipster.

The trial court concluded that the tip was "unsubstantiated." I disagree and believe that the facts as found provided reasonable sus-

picion regardless of whether defendant committed a traffic offense in the presence of the officers or otherwise drove erratically. If the trial judge applied the correct standard of reasonable suspicion under a totality of the circumstances test, then the court should have found that the anonymous tip was sufficiently corroborated by the officers to meet the reasonable suspicion standard. In *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301 (1990), the Supreme Court upheld a traffic stop after an anonymous tipster correctly described the suspect vehicle's location, time of departure and destination. The Court upheld the right of the police to stop the vehicle prior to its reaching the described destination, finding that the tip was sufficiently corroborated to provide the reasonable suspicion required before such a traffic stop could be executed.

Numerous cases following *Alabama v. White* have applied the reasonable suspicion under the totality of the circumstances test to uphold traffic stops based on factual settings much like the one in the case at bar. In *U.S. v. Simmons*, 560 F.3d 98, 107-08 (2d Cir. 2009), *cert. denied*, ___ U.S. ___, 175 L. Ed. 2d 377 (2009), reasonable suspicion was found when defendant's location and description matched that provided by an anonymous 911 tip about an ongoing assault. A traffic stop was upheld by the Third Circuit when an anonymous tipster called 911 stating that they were following defendant's automobile, described the vehicle, the locale and his observation that the defendant was brandishing a gun, *U.S. v. Torres*, 534 F.3d 207, 211-12 (3d Cir. 2008). The Fourth Circuit upheld a traffic stop based on a 911 call where the caller reported firsthand observation of the defendant's driving and threats being made by the defendant. *U.S. v. Elston*, 479 F.3d 314, 318-19 (4th Cir. 2007). In *Elston* the court stated:

> It is well established that anonymous information can furnish grounds for a reasonable search or seizure if it exhibits sufficient indicia of reliability. *See J.L.*, 529 U.S. at 270; *United States v. Perkins*, 363 F.3d 317, 323 (4th Cir. 2004). Our decisions provide guidance on the factors that can indicate the reliability of anonymous information. We have recognized, for example, that an anonymous call is more likely to be reliable if it provides substantial detail about the individuals and the alleged criminal activity it describes; if it discloses the basis of the informant's knowledge; and, especially, if the informant indicates that her report is based on her contemporaneous personal observation of the call's subject.

The cases cited above are just a few examples of the numerous cases similar to the case *sub judice* which found the corroboration to be adequate to substantiate the tip under the reasonable suspicion standard. Here, as in the example cases, the caller claims to be providing firsthand observation of defendant's erratic driving; and the caller identified the location, general type of car (small), as well as the correct color and license plate. The trial court accepts the fact that the officers located the car in the described parking lot, and the fact that it was the same color, was a small car (Nissan), and bore the license plate described by the caller. Despite this detail of corroboration, the trial judge concluded the tip was "unsubstantiated," perhaps because she was applying a probable cause standard rather than reasonable suspicion, and thus failed to apply the teachings of *Alabama v. White* and its progeny. In any event, I would reverse without remand as I believe the trial judge's credibility determinations were superfluous.

Furthermore, I would address erroneous evidentiary rulings by the trial judge which were evidently made on the basis of the court's misunderstanding of the correct legal standard applicable to the facts of the case. In her conclusions of law the court stated:

1. That there was insufficient evidence for probable cause to stop and arrest the defendant.

2. That there was insufficient evidence to conduct a search of defendant's vehicle and that the search was in violation of the defendant's 4th Amendment rights.

3. That there was insufficient evidence to seize defendant's blood for testing and that there was no testimony that the defendant waived his rights with regard to blood testing.

BASED UPON the foregoing . . . CONCLUSIONS OF LAW, it is hereby

ORDERED ADJUDGED AND DECREED

1. That any evidence or statements received from the defendant by the law enforcement officers, Reidsville Police Department, on or about the 13th day of March, 2009, shall be suppressed and shall not be introduced as evidence at the defendant's trial.

First, as discussed above, based on *Alabama v. White, Elston* and other similar cases, I would find that there was reasonable suspicion to stop defendant's vehicle as the 911 tip had been adequately cor-

roborated as a matter of law. In her findings of fact the court noted that one of the officers testified that he smelled the odor of burnt marijuana emanating from defendant's automobile as he approached the car. This fact was undisputed, and the testimony was received without objection. The trial court erroneously concluded that the officers had no authority to search defendant's automobile, even though case law in this state has long provided probable cause to search a vehicle based on the odor of marijuana (or other drugs with distinctive odors). *See State v. Greenwood*, 301 N.C. 705, 708, 273 S.E.2d 438, 441 (1981). An evidentiary ruling is reviewed for abuse of discretion; however, a ruling which is based on an erroneous understanding of the law constitutes an abuse of discretion as a matter of law. *Hines v. Wal-Mart*, 191 N.C. App. 390, 663 S.E.2d 337 (2008), *disc. review denied*, 363 N.C. 126, 673 S.E.2d 131 (2009).

Next, the trial court sustained objections to the officer's routine questioning of defendant during the traffic stop before he was taken into custody. It has long been the law that traffic stops do not trigger the need for *Miranda* warnings. At this point, defendant had exited his automobile and was answering questions related to the stop prior to the search of the vehicle. Once the search was conducted and items of drug paraphernalia in violation of N.C. Gen. Stat. § 90-113.22(a) (2009) were discovered, defendant was formally arrested. During argument on the motion to suppress, the Assistant District Attorney attempted to cite the correct case law to the trial court, who cut the prosecutor off and refused to listen as she cited the controlling law. The colloquy was as follows:

[THE PROSECUTOR]: Your Honor, I would ask the Court to review the case of Herkimer [sic] versus McCarty. That's a U.S. Supreme Court [case], Your Honor, citation 468 U.S. 420, which states, Your Honor: An Ohio law enforcement officer saw the defendant's car—

THE COURT: Now, what is this for?

[THE PROSECUTOR]: This is for—

THE COURT: Something else?

[THE PROSECUTOR]: —his objection.

THE COURT: I've already ruled.

[THE PROSECUTOR]: Your Honor, this could be for the objection for whether he's had his Miranda rights read to him.

THE COURT: But I've ruled.

The Assistant District Attorney was attempting to call the court's attention to the case of *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317 (1984), the leading Supreme Court case which holds that routine questioning during a traffic stop does not implicate *Miranda* and warnings are not required. *Accord, U.S. v. Rusher*, 966 F.2d 868 (4th Cir. 1992); *State v. Sutton*, 167 N.C. App. 242, 249, 605 S.E.2d 483, 487 (2004); *disc. review denied and appeal dismissed*, 359 N.C. 326, 611 S.E.2d 847 (2005).

Finally, the trial judge sustained the defense counsel's objection to the admission of defendant's consent to allow blood to be drawn from him at the hospital without elaboration. It is unclear why the court ruled summarily and denied the prosecution the right to establish that defendant consented to the blood draw. Even without consent, I believe that the evidence from the blood draw was admissible, as it was done upon probable cause and under exigent circumstances. *State v. Carter*, 322 N.C. 709, 723, 370 S.E.2d 553, 561 (1988). Perhaps the trial judge believed that if the State lacked probable cause to arrest, defendant should not have been at the hospital anyway as his car should not have been stopped. Since those rulings are now shown to be in error, it is clear that the consent form and the results should have been admitted.

In conclusion, I would reverse the trial judge's suppression order without remand and would hold that the traffic stop was executed after reasonable suspicion, under the totality of the circumstances, was demonstrated based upon the officer's undisputed corroboration of the anonymous 911 tip. I would further reverse the trial court's order of suppression of defendant's statements during routine roadside questioning and reverse the lower court's suppression of the evidence gained from the search of defendant's vehicle. Finally, I would reverse the trial court's exclusion of defendant's consent form and the blood draw evidence, all for the reasons stated above.