IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-997

Filed 19 September 2023

New Hanover County, Nos. 19CRS52567-68, 52570

STATE OF NORTH CAROLINA

v.

GERALD TELPHIA JACOBS, II, Defendant.

Appeal by defendant from judgments entered 30 June 2022 by Judge R. Kent Harrell in the New Hanover County Superior Court. Heard in the Court of Appeals 22 August 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Lewis Lamar, Jr., for the State.*

*Richard Croutharmel, for defendant-appellant.*

FLOOD, Judge.

Gerald Telphia Jacobs, II ("Defendant") appeals pursuant to N.C. Gen. Stat. § 15A-979(b) (2021) from an order denying his motion to suppress evidence. Defendant argues the trial court improperly denied his motion because the arresting officer lacked reasonable suspicion to stop his vehicle, in violation of his right to be free from

unreasonable searches and seizures. Defendant specifically contends the officer did not witness a traffic violation, and his claims of smelling unburnt marijuana emanating from Defendant's vehicle were "inherently incredible." Because the trial court's findings were supported by competent evidence, we hold the trial court did not err in denying Defendant's motion to suppress.

## I. Factual & Procedural Background

The evidence tends to show the following: On 29 March 2019, Officer Benjamin Galluppi ("Officer Galluppi") of the Wilmington Police Department was traveling in his patrol car on Market Street between 29th Street and Covil Avenue. Officer Galluppi turned onto Covil Avenue and noticed Defendant's car traveling in front of him. There were no other cars on Covil Avenue, and Officer Galluppi, while following Defendant, remained roughly two and a half car lengths behind him. The two cars traveled roughly fifty feet down Covil Avenue when, according to Officer Galluppi, he could "very strongly" smell the odor of marijuana emanating from Defendant's vehicle.

Officer Galluppi continued to follow Defendant for about five or six blocks down Covil Avenue and eventually pulled Defendant over after he turned left onto Broad Street. According to Officer Galluppi, he stopped Defendant solely because of the unburned marijuana smell. Officer Galluppi walked up to the driver's side of Defendant's car and noticed the driver's side window was cracked open about three inches. Defendant was holding his driver's license and a piece of paper up against

the window. Upon getting closer to Defendant's car, Officer Galluppi continued to detect the odor of marijuana and testified that, at that point, the odor was "even stronger." After a discussion of the ownership of the car, Officer Galluppi asked Defendant to step out of the car.

Once Defendant was out of the car, Officer Galluppi noticed a small plastic bag of white powder "at [Defendant's] feet" and an open bottle of alcohol in the backseat. Officer Galluppi then patted Defendant down and handcuffed him for safety while Officer Galluppi waited for backup to arrive. Detective Javier Tapia ("Detective Tapia") of the Wilmington Police Department arrived at the scene roughly two minutes after Officer Galluppi stopped Defendant. Upon arrival, Detective Tapia saw Defendant sitting handcuffed on the tailgate of his car and could also smell a "very strong" odor of unburned marijuana. By this time, Officer Galluppi had opened all of Defendant's car's doors, and the driver's side window was cracked open.

Officer Galluppi and Detective Tapia conducted a frisk of Defendant and a full search of Defendant's car. In the car they found heroin, a MDMA tablet, powder cocaine, crack cocaine, and approximately sixteen grams of marijuana. The search of Defendant's person and car were captured on Officer Galluppi's bodycam. Officer Galluppi arrested Defendant for trafficking in cocaine; possession with intent to sell or deliver cocaine; felony possession of cocaine; possession with intent to sell or deliver heroin; possession with intent to sell or deliver MDMA; possession of MDMA; and misdemeanor possession of more than one-half ounce, but less than one and one-half

ounces of marijuana. The marijuana Officer Galluppi found in the car was in the center console, wrapped in twelve separate plastic bags.

On 9 September 2019, the New Hanover County grand jury returned true bills of indictment against Defendant on the following charges: trafficking in cocaine by possession of 28 grams or more but less than 200 grams of cocaine; trafficking in cocaine by transportation of 28 grams or more, but less than 200 grams of cocaine; felony possession of a Schedule II controlled substance; possession with intent to sell or deliver cocaine; possession with intent to sell or deliver heroin; possession with intent to sell or deliver MDMA; felony possession of MDMA; and misdemeanor possession of greater than one-half ounce, but less than one and one-half ounces of marijuana.

On 24 October 2019, Defendant filed a motion to suppress the evidence obtained from the search. He argued law enforcement violated his Constitutional right to be protected from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and the North Carolina Constitution. On 27 May 2021, the trial court held a suppression hearing. At the hearing, Defendant testified he was not smoking marijuana while driving, and all the windows of the vehicle were closed before he was pulled over. He testified that, about an hour before the traffic stop, he was smoking marijuana at a house on 10th Street and put the narcotics in his car when he left the house. He also testified he had put marijuana in the center console of the car.

Officer Galluppi testified he did not notice whether Defendant's driver's side window was open until he pulled Defendant over, and the back rear-view window of Defendant's car was halfway open. He admitted, however, that he did not indicate in his written police report that Defendant's back rear-view window was halfway open. Counsel for Defendant played the bodycam footage at the thirty-five-minute mark, and Officer Galluppi admitted, after watching it, that it showed the rear-view window of Defendant's car was closed.

At the close of the hearing, the trial court denied Defendant's motion to suppress, and an order reflecting the same was filed on 27 May 2021.

On 30 June 2022, Defendant's guilty plea to trafficking in cocaine, possessing with intent to sell or deliver heroin, and possessing with intent to sell or deliver MDMA was accepted. Defendant was determined to be a prior record level IV for felony sentencing purposes. For his guilty plea to trafficking cocaine, Defendant received an active sentence of thirty-five to fifty-one months. At the expiration of that sentence, Defendant was ordered to serve another active sentence of nine to twenty months for his guilty plea to possession with intent to sell or deliver heroin. And, at the expiration of that sentence, Defendant was ordered to serve another active sentence of eight to nineteen months for his guilty plea to possession with intent to sell or deliver MDMA. Additionally, he was ordered to pay a $50,000 fine and attorney's fees. Defendant gave oral notice of appeal from the judgments following their announcements in open court.

## II. **Jurisdiction**

This Court has jurisdiction to address Defendant's appeal pursuant to N.C. Gen. Stat. §§ 15A-144(a1)-(a2) (2022) and 15A-979(b) (2021).

## III. **Analysis**

Defendant's sole argument on appeal is that the trial court erred in denying his motion to suppress the evidence obtained from the traffic stop. Defendant specifically contends the arresting officer lacked reasonable suspicion to initiate the stop, as his claim of smelling unburned marijuana emanating from Defendant's vehicle was "inherently incredible." We disagree.

Our standard of review of a trial court's denial of a motion to suppress is "whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law." *State v. Biber,* 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citation omitted). "Conclusions of law are reviewed *de novo* and are subject to full review." *Id.* at 168, 712 S.E.2d at 878. This Court, "under a *de novo* review, [ ] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* at 168, 712 S.E.2d at 878.

As an initial matter, we address the framework for evaluating the constitutionality of an ordinary traffic stop. The Fourth Amendment of the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, "protects private citizens against unreasonable searches and seizures." *State v. Johnson*, 378 N.C. 236, 244, 861 S.E.2d 474, 483 (2021); *see*

N.C. Const. art. I, § 20; *see* U.S. Const. amend. IV. "Traffic stops are considered seizures subject to the strictures of these provisions and are historically reviewed under the investigatory detention framework first articulated in *Terry v. Ohio*." *Id.* at 244, 861 S.E.2d at 483 (citation omitted). When a law enforcement officer has a "reasonable, articulable suspicion that criminal activity is afoot" he is justified in initiating a traffic stop. *Id.* at 244, 861 S.E.2d at 483 (citation omitted). Reasonable suspicion is a "less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." *State v. Maready*, 362 N.C. 614, 618, 669 S.E.2d 564, 567 (2008) (citation and internal quotation marks omitted). To satisfy the reasonable suspicion standard, only "some minimal level of objective justification is required." *Id.* at 618, 669 S.E.2d at 567 (citation omitted); *see State v. Watkins*, 337 N.C. 437, 442, 446 S.E.2d 67, 70 (1994) (providing that a justified traffic stop requires "something more than an unparticularized suspicion or hunch").

Officer testimony can establish reasonable suspicion, and "[w]e defer to the trial court's assessment of the officer's credibility . . . . Accordingly, we are bound by the trial court's finding based upon that credibility determination." *State v. Salinas*, 214 N.C. App. 408, 411, 715 S.E.2d 262, 264 (2011) (cleaned up) (citation and internal quotation marks omitted) ("[A]n appellate court affords great deference to the trial court in this respect because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based on those findings, render a legal decision . . . as to whether or not a constitutional violation of

some kind has occurred.") (citation omitted). This Court, as opposed to the trial court, "is much less favored [to make such decisions] because it sees only a cold, written record . . . [and as such] the findings of the trial judge are, and properly should be, conclusive on appeal if they are supported by the evidence." *Id.* at 411, 715 S.E.2d at 265 (citation omitted).

Our Supreme Court, however, has provided that there are circumstances where this Court does not defer to the trial court's assessment of witness credibility. In *State v. Miller,* for example, our Supreme Court held, "[t]his rule [of deference] does not apply . . . where the only evidence identifying the defendant as the perpetrator of the offense [was] *inherently incredible* because of undisputed facts, clearly established by the State's evidence, as to the physical conditions under which the alleged observation occurred." *State v. Miller*, 270 N.C. 726, 731, 154 S.E.2d 902, 905 (1967) (emphasis added) (holding that it was inherently incredible for one to observe, from a great distance, details "which would enable him, six hours later, to identify a complete stranger with the degree of certainty which would justify the submission of guilty of such person to the jury").

This Court has recognized that an officer's smelling of unburned marijuana can provide probable cause to conduct a warrantless search and seizure, and that an officer's smelling of such is *not* inherently incredible. Most notably, in *State v. Stover*, officers testified they smelled a "strong odor of marijuana" when they arrived at the defendant's home to conduct a "knock and talk" after receiving a tip that the

defendant's residence was a place where marijuana could be purchased. 200 N.C. App. 506, 507, 685 S.E.2d 127, 129 (2009). When the officers arrived at the residence, they stepped out of their vehicles and immediately "perceived a 'strong odor of marijuana,' which grew stronger as they approached the house." *Id.* at 507, 685 S.E.2d at 129. The officers did not have a warrant to search the home, and their smelling of the unburned marijuana provided probable cause to conduct a warrantless entry into the defendant's home. *See id.* at 513, 685 S.E.2d at 132.

The defendant's argument on appeal in *Stover* "center[ed] on the trial court's denial of his motion to suppress the evidence seized." *Id. at* 510, 685 S.E.2d at 131. He contended "the trial court's finding of fact that the officers 'detected a strong odor of marijuana in the air' was inherently incredible, and therefore, cannot constitute competent evidence[.]" *Id.* at 510, 685 S.E.2d at 131. He specifically reasoned this finding of fact was inherently incredible because the marijuana at issue was not burning, most of it was kept in sealed containers, and what was loose was too small a quantity to be observable; therefore, the officers could not have been able to smell the marijuana from outside his residence. *Id.* at 512, 685 S.E.2d at 132. This Court held, "the simple fact that the majority of marijuana was in closed containers when the officers found it does not make the officers' smelling of the drug 'inherently incredible.'" *Id.* at 512, 685 S.E.2d at 132. Thus, "the officers' testimony that they smelled marijuana outside defendant's residence was competent evidence upon which the trial court could base its finding of fact that the officers 'detected a strong odor of

marijuana in the air.'" *Id.* at 513, 685 S.E.2d at 132.

Defendant, here, makes a similar argument to that of the defendant in *Stover*: that Officer Galluppi's smelling of the unburned marijuana in Defendant's car was "inherently incredible[,]" and therefore could not have supported the trial court's finding that Officer Galluppi had reasonable suspicion to stop Defendant's car. We do not find Defendant's argument persuasive, and conclude Officer Galluppi's smelling of the unburned marijuana was not inherently incredible. In *Stover*, the marijuana was unburned, wrapped in plastic, and located within a residence, which the *Stover* officers testified they could smell from outside. *See id.* at 508, 685 S.E.2d at 130. We held the officers' smelling of the unburned marijuana not inherently incredible, and that it provided probable cause for the officers to search the defendant's domicile. *See id.* at 508, 685 S.E.2d at130. Here, Officer Galluppi, like the officers in *Stover*, testified he smelled the odor of marijuana emanating from Defendant's vehicle "very strongly[,]" and the marijuana at issue here was unburned, wrapped in plastic, and located in the center console of Defendant's car. Thus, Officer Galluppi's claim that he smelled unburned marijuana, for the purpose of satisfying the reasonable suspicion standard—a "less demanding standard" than that for probable cause—was not inherently incredible, and his testimony was competent evidence to support the trial court's findings of fact. *See* Maready, 362 N.C. at 618, 669 S.E.2d at 567; *see Watkins*, 337 N.C. at 442, 446 S.E.2d at 70; *see Stover*, 200 N.C. App. at 508, 685 S.E.2d at 130.

As Officer Galluppi's smelling of unburned marijuana was not inherently incredible, we defer to the trial court's assessment of Officer Galluppi's testimonial credibility, which supported the factual finding that he smelled the marijuana "very strongly." *See Salinas*, 214 N.C. App. at 411, 715 S.E.2d at 265. This finding, in turn, supported the trial court's conclusion that Officer Galluppi had proper reasonable suspicion—a "minimal level of justification"—to justify the traffic stop. *See Watkins*, 337 N.C. at 442, 446 S.E.2d at 70. We therefore conclude the trial court did not err in denying Defendant's motion to suppress.

## IV. <u>Conclusion</u>

Defendant has failed to demonstrate Officer Galluppi lacked reasonable suspicion to initiate the stop of his vehicle. Accordingly, the trial court did not commit reversible error in denying Defendant's motion to suppress evidence obtained from the stop.

NO ERROR.

Chief Judge STROUD and Judge STADING concur.