McGEE, Chief Judge.
*174 Christopher David Barker ("Defendant") appeals from judgments entered after a jury found him guilty of driving while impaired ("DWI"). Defendant argues that the trial court erred by admitting testimony about the results of a horizontal gaze nystagmus test ("HGN") because the testifying officer did not establish the evidentiary foundation required for expert testimony. We disagree and find no error.
I. Background
Defendant was convicted of driving while impaired in Brunswick County District Court ("the district court") on 10 December 2015. Upon appeal, Defendant's case was then tried before a jury in Brunswick County Superior Court ("the superior court") on 22 August 2016. The State's sole witness at trial was Trooper David Inman of the North Carolina Highway Patrol ("Trooper Inman"). Trooper Inman testified he responded to a call on 7 February 2015 regarding a vehicle accident near Leland, North Carolina. When Trooper Inman arrived at the scene of the accident, approximately thirty to forty-five minutes after receiving the call, he saw that a single vehicle had become stuck in a small wooded area after having driven through a T-shaped intersection. Defendant was at the scene and admitted that he had been driving the vehicle, but claimed he did not see the stop sign at the intersection because he was distracted by his cell phone.
Trooper Inman noted that Defendant seemed unsteady, sleepy, and "thick-tongued." He also testified there was a moderate odor of alcohol coming from Defendant's *173 breath. Trooper Inman asked Defendant if he had been drinking. Defendant admitted that he had consumed a twenty-two ounce beer and a few sips of another. Trooper Inman asked Defendant to blow into an Alco-Sensor, which Defendant did, and the Alco-Sensor indicated Defendant had, in fact, consumed alcohol. As a result, Trooper Inman asked Defendant to perform a variety of standardized field sobriety tests ("SFSTs"). The SFSTs included the walk-and-turn test ("WAT"), the one-leg-stand test ("OLS"), and the HGN test. After Defendant completed all the tests, Trooper Inman testified he was of the opinion that Defendant's mental and physical capacities were impaired by alcohol. He then arrested Defendant for DWI.
Trooper Inman described the HGN testing procedures he had used and the State tendered him as an expert in HGN testing. Trooper Inman testified the HGN test involves "ask[ing] someone to follow a stimulus with just their eyes," while the administering officer looks for *175 nystagmus, which is "a twitching of the eye." These eye twitches occur when a person has consumed alcohol, and at different angles depending on the level of intoxication. Trooper Inman testified that the administering officer is looking for whether the nystagmus had "onset prior to 45 degrees." Before beginning the test, the officer must observe the eye while the subject is looking forward in order to determine whether the subject has a natural, resting nystagmus. Trooper Inman explained that:
[I]f whenever you're watching the tip of my finger, if I see your eyes shaking, then it's occurring naturally. So there's no sense in me taking-doing the test at all, because if it's occurring naturally, I can't tell if there is anything in your system that's causing that to happen.
Trooper Inman testified that a resting nystagmus occurs in "less than 1 percent of the population" and "can occur when someone has some type of head injury." He then testified that Defendant did not have a resting nystagmus, that Defendant's eyes were unable to smoothly follow the object, and that his nystagmus had onset prior to forty-five degrees in both eyes.
Defendant objected to Trooper Inman being qualified as an expert and moved for a voir dire of the witness. Trooper Inman then testified that, as part of his basic law enforcement training, he received twenty-four hours of training on standard field sobriety testing; that he later participated in a sixteen-hour training course called Advanced Roadside Impaired Driving Enforcement ("ARIDE"); and that he received two-hour refresher courses on a yearly basis as part of his in-service training. The ARIDE training course included reading medical studies regarding the SFSTs, including HGN testing. The trial court overruled Defendant's objection and Trooper Inman was permitted to testify as an expert. After Trooper Inman was accepted as an expert, Defendant did not object to or move to strike any of Trooper Inman's testimony regarding the HGN testing.
Trooper Inman further discussed the method of administering the SFSTs, including HGN. He testified that Defendant displayed six out of six indicators of impairment during the HGN test. Trooper Inman testified that, based on the results of the various SFSTs, it was his opinion that Defendant had "consumed a sufficient amount of impairing substance so as to appreciably impair his mental and physical faculties." During cross-examination, Trooper Inman testified that if someone displayed four out of six indicators, there was an eighty-eight percent probability that they would have a blood alcohol concentration of .08 or above. At *176 the conclusion of all the evidence, the trial court instructed the jury on the appreciable impairment theory under N.C. Gen. Stat. § 20-138.1(a) and the jury found Defendant guilty of driving while impaired.
II. Analysis
Defendant argues that the trial court erred in admitting Trooper Inman's testimony regarding the HGN test results. Specifically, Defendant argues that the trial court failed to comply with its gatekeeping function under Rule 702 of the North Carolina Rules of Evidence by failing to establish the reliability of the HGN test.
*174 A. Appellate Jurisdiction
As a threshold matter, we must address whether Defendant's appeal is properly before us. In order for this Court to have jurisdiction to hear this appeal, the appellant has the responsibility of establishing the jurisdiction of the superior court in the appellate record. State v. Phillips , 149 N.C. App. 310, 313-314, 560 S.E.2d 852, 855 (2002). Defendant originally filed the record on appeal in this case on 23 January 2017. The copy of the district court's judgment provided in the appellate record did not reflect that Defendant had given an oral notice of appeal. A party may appeal from a judgment of the district court only by giving oral notice of appeal at trial or filing a written notice of appeal within fourteen days after entry of the judgment. N.C. Gen. Stat. § 15A-1431 (2015) ; N.C. R. App. P. 4(a).
Appellant subsequently filed a petition for a writ of certiorari on 21 March 2017, which contained a certified copy of the district court's minutes taken during the trial, a certified copy of the back of the district court file containing a notation acknowledging Defendant's notice of appeal, as well as an affidavit from Defendant's trial attorney. These documents tended to show that Defendant gave oral notice of appeal in the district court following the entry of the judgment and that the absence of the notation on the district court's judgment was a clerical error. This Court has discretion to allow the amendment of the appellate record under N.C. R. App. 9(b)(5). We believe that the documents provided are sufficient to show that Defendant gave oral notice of appeal to the superior court under N.C. R. App. 9(a)(3)(h). We therefore allow Defendant's writ of certiorari to review the merits of the appeal.
B. Standard of Review
A trial court's ruling regarding the admissibility of expert testimony "will not be reversed on appeal absent a showing of abuse of discretion." State v. McGrady , 368 N.C. 880, 893, 787 S.E.2d 1, 11 (2016) (citing *177 Howerton v. Arai Helmet, Ltd. , 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) ). A trial court may only be reversed for abuse of discretion "upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." Id. (citing State v. Riddick , 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986) ).
C. Rule 702 Requirements
Our Supreme Court clarified the effects of the 2011 amendments to N.C. Gen. Stat. § 8C-1, Rule 702 (2011) in McGrady, 368 N.C. 880, 787 S.E.2d 1. The Court noted the General Assembly amended Rule 702(a) to mirror the language of the federal rule of evidence to read:
(a) If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
(1) The testimony is based upon sufficient facts or data.
(2) The testimony is the product of reliable principles and methods.
(3) The witness has applied the principles and methods reliably to the facts of the case.
(a1) A witness, qualified under subsection (a) of this section and with proper foundation, may give expert testimony solely on the issue of impairment and not on the issue of specific alcohol concentration level relating to the following:
(1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered by a person who has successfully completed training in HGN.
N.C.G.S. § 8C-1, Rule 702.
McGrady stated that the amended language signaled the General Assembly's intent to incorporate the federal standards for the admission of expert witness testimony. McGrady , 368 N.C. at 888, 787 S.E.2d at 8. The federal standard for the admission of expert witness testimony has been articulated in a line of cases beginning with Daubert v. Merrell Dow Pharmaceuticals, Inc. , 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed. 2d 469 (1993). Our Supreme Court confirmed in *175 McGrady that North Carolina is now a *178 Daubert state; however, the Court was careful to note that "[o]ur previous cases are still good law if they do not conflict with the Daubert standard." McGrady , 368 N.C. at 888, 787 S.E.2d at 8.
Under Daubert , a trial court is required to make an inquiry into the reliability of the expert testimony. Daubert , 509 U.S. at 590, 113 S.Ct. at 2795, 125 L.Ed. 2d at 469. The primary focus of the inquiry is on "the reliability of the witness's principles and methodology, not on the conclusions that they generate." McGrady , 368 N.C. at 890, 787 S.E.2d at 9. The Court in McGrady set out the five Daubert factors including:
(1) whether a theory or technique ... can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the theory or technique's "known or potential rate of error;" (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the theory or technique has achieved "general acceptance" in its field.
McGrady , 368 N.C. at 890-91, 787 S.E.2d at 9 (citing Daubert , 509 U.S. at 593-94, 113 S.Ct. at 2796-2797, 125 L.Ed. 2d at 469 ) (internal citations omitted). Decisions by North Carolina courts following Daubert have added additional reliability factors, including consideration of "the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked 'to sacrifice its independence by accepting [the] scientific hypotheses on faith,' and independent research conducted by the expert." Howerton , 358 N.C. at 460, 597 S.E.2d at 687 (citing State v. Pennington , 327 N.C. 89, 98, 393 S.E.2d 847, 852 (1990) ). The inquiry is flexible, and " Daubert 's list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Kumho Tire Co., Ltd. v. Carmichael , 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed. 2d 238, 246 (1999).
Defendant argues that Trooper Inman failed to provide the trial court with the necessary foundation to establish the reliability of the HGN test. Under McGrady and subsequent cases, such a finding is simply unnecessary. Recently, in State v. Godwin , our Supreme Court stated that "with the 2006 amendment to Rule 702, our General Assembly clearly signaled that the results of the HGN test are sufficiently reliable to be admitted into the courts of this State." Godwin , 369 N.C. 604, ----, 800 S.E.2d 47, 53 (2017). See also State v. Younts , --- N.C. App. ----, ----, 803 S.E.2d 641, 648 (2017). Additionally, where such a reliability inquiry is required, the test is much less rigid than Defendant would ask this Court to require. In McGrady , our Supreme Court was clear that *179 "[the factors articulated in Daubert ] are part of a 'flexible' inquiry, so they do not form 'a definitive checklist or test[.]' " McGrady , 368 N.C. at 890-891, 787 S.E.2d at 9-10. The trial court may consider other factors that assist the court in assessing reliability given "the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. (citing Kumho , 526 U.S. at 150, 119 S.Ct. at 1175, 143 L.Ed. 2d at 238 ) (internal citations omitted). Because Rule 702 established that HGN tests are sufficiently reliable to be admitted in our courts, the trial court in the present case did not abuse its discretion in admitting the results of the HGN test.
Defendant relies heavily on the decision in State v. Helms , 348 N.C. 578, 504 S.E.2d 293 (1998), which, critically, was decided prior to the General Assembly's amendments to Rule 702 in 2006 and 2011, as well as the decision in McGrady . In Helms , our Supreme Court decided that "the HGN test does not measure behavior a lay person would commonly associate with intoxication but rather represents specialized knowledge that must be presented to the jury by a qualified expert." Helms, at 581, 504 S.E.2d at 295. However, our Supreme Court found in Godwin that reading subsections (a) and (a1) of Rule 702 together, "it is evident that the General Assembly envisioned the precise scenario we address today and made clear provision to allow testimony from an individual 'who has successfully completed training in HGN' and meets the criteria set forth in Rule 702(a)." Godwin , --- N.C. App. at ----, 800 S.E.2d at 50. See also *176 State v. Shore , --- N.C. App. ----, ----, 804 S.E.2d 606, 614 (2017) ("experience alone or experience combined with knowledge and training is sufficient to establish a proper foundation for reliable expert testimony[.]"). The trial court in Godwin never determined that the officer was an expert witness in HGN testing, yet our Supreme Court held "when the record contains sufficient evidence upon which the trial court could have based an explicit finding that the witness was an expert, an appellate court may conclude that the trial court found the witness to be an expert." Godwin , --- N.C. App. at ----, 800 S.E.2d at 48, 50-51 ("such explicit recognition is not required[.]"). In the present case, the court determined that Trooper Inman was an expert in HGN testing.
McGrady clearly states that the inquiry still involves a "three-step framework-namely, evaluating qualifications, relevance, and reliability" and "expert testimony must satisfy each to be admissible." McGrady , 368 N.C. at 889-892, 787 S.E.2d at 8-10. The trial court's important role includes examining the qualifications of a witness tendered as an expert, the basis for the witness's opinions, and the extent of the witness's testimony. See, e.g. State v. Holloman , 2017 WL 4365111 (2017) (determining that because the highway patrolman did not specifically mention any *180 training in HGN testing, there was insufficient evidence on the record to support finding that a highway patrolman was an expert in HGN testing, despite the findings in Godwin ). The depth of the inquiry is limited only in the context of HGN testing, where the General Assembly has clearly signaled that the requirements be applied leniently. In the present case, there was sufficient evidence to support the trial court's determination that Trooper Inman was qualified to testify as an expert as to the reliability of the HGN test.
III. Conclusion
We find no error in Defendant's trial for driving while impaired.
NO ERROR.
Judge BERGER concurs.
Judge DIETZ concurs with separate opinion.