IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-381

Filed: 17 March 2020

Catawba County, No. 15 CRS 52717

STATE OF NORTH CAROLINA

v.

TOBY JAY WILES

Appeal by defendant from order entered 31 August 2017 by Judge W. Robert Bell, and judgment entered 21 December 2018 by Judge Nathaniel J. Poovey in Catawba County Superior Court. Heard in the Court of Appeals 30 October 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Matthew E. Buckner, for the State.*

*Arnold & Smith, PLLC, by Paul A. Tharp, for defendant-appellant.*

ZACHARY, Judge.

Defendant Toby Jay Wiles appeals from an order denying his motion to suppress and a judgment entered upon a jury's verdict finding him guilty of driving while impaired. After careful review, we affirm the trial court's denial of Defendant's motion to suppress, and conclude that he received a fair trial, free from error.

**Background**

At around 8:00 p.m. on 23 May 2015, Defendant drove past State Trooper Kelly Stewart, who was parked along the side of the road. Believing that the passenger in the front seat of Defendant's truck was not wearing a seatbelt, Trooper Stewart

signaled for Defendant to pull over. As Trooper Stewart approached the passenger's side of Defendant's parked truck, he "[a]lmost instantaneously" noticed an odor of alcohol "coming through th[e] passenger window." Upon reaching the passenger-side window, Trooper Stewart saw the passenger wearing his seatbelt. The passenger stated he had worn his seatbelt the entire time, and Trooper Stewart realized that the gray seatbelt had blended into the passenger's gray shirt. Accordingly, Trooper Stewart decided not to issue a citation to Defendant.

Trooper Stewart explained why he had stopped the vehicle, and the passenger responded that he had been wearing his seatbelt prior to Trooper Stewart's initiation of the stop. Trooper Stewart, noting the strong odor of alcohol emanating from the vehicle, asked whether either man had been drinking. Both answered in the affirmative. Trooper Stewart asked the men to exit the truck, and he observed that Defendant's "eyes were red, glassy and bloodshot." Trooper Stewart administered a roadside Alco-Sensor test to Defendant, which detected the presence of alcohol on Defendant's breath. Trooper Stewart next conducted a horizontal gaze nystagmus ("HGN") test on Defendant, which indicated that Defendant was impaired. Trooper Stewart arrested Defendant and charged him with driving while impaired.

Defendant filed a motion to suppress "all evidence and statements obtained as a result of the stop" by Trooper Stewart, which came on for hearing before the Honorable W. Robert Bell in Catawba County Superior Court on 31 August 2017.

Trooper Stewart testified that, but for the seatbelt issue, Defendant appeared to abide by "all the normal rules of the road." In its order denying Defendant's motion to suppress, the trial court found that Trooper Stewart "[b]eliev[ed] it would be a dereliction of duty to ignore the smell of alcohol coming from the automobile." Thus, the trial court concluded that "[d]uring the 'mission of' the valid traffic stop and prior to the completion of its initial purpose Trooper Stewart obtained information that provided reasonable suspicion of criminal activity to warrant an extension of the initial traffic stop."

On 17 December 2018, Defendant was tried before a jury in Catawba County Superior Court, the Honorable Nathaniel J. Poovey presiding. The jury found Defendant guilty of driving while impaired, and Defendant gave notice of appeal in open court.

## Discussion

Defendant raises six issues on appeal: three arising from the hearing on his motion to suppress, and three from his trial. We address each issue in turn.

## I. Motion to Suppress

Defendant contends that the trial court erred in denying his motion to suppress because Trooper Stewart (1) lacked reasonable suspicion to stop Defendant's truck; (2) unconstitutionally extended the length of the stop; and (3) lacked probable cause to arrest Defendant.

A.      Standard of Review

It is well settled that

> [t]he standard of review for a motion to suppress is whether the trial court's findings of fact are supported by the evidence and whether the findings of fact support the conclusions of law.  The court's findings are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting.  The trial court's ruling on a motion to suppress is afforded great deference upon appellate review as it has the duty to hear testimony and weigh the evidence.

*State v. Wainwright*, 240 N.C. App. 77, 83-84, 770 S.E.2d 99, 104 (2015) (internal citations and quotation marks omitted).  "Conclusions of law are reviewed de novo and are subject to full review." *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011) (citation omitted).

B.      The Stop of Defendant's Vehicle[1]

From the order denying his motion to suppress, Defendant challenges findings of fact 6, 7, and 8 as not being supported by competent evidence, as well as conclusion of law 2, which stated that the traffic stop was valid.  We address each in turn.

1. *Findings of Fact*

Defendant challenges the following findings:

> 6.      [Trooper Stewart] observed the Defendant driving towards his position.  There was a passenger in the front passenger seat of the vehicle that Trooper Stewart believed 100% was not wearing a seat belt.

---

[1] Defendant properly objected to this issue at both the suppression hearing and the subsequent trial.

7. [Trooper] Stewart stopped the truck being driven by the Defendant and approached the passenger side to investigate. Standing at the open passenger side window [Trooper Stewart] smelled a strong odor of alcohol emanating from the passenger compartment of the vehicle. He also noticed that the passenger was wearing a seatbelt.

8. The passenger stated that he had been wearing a seatbelt the entire time. Despite his certainty that the passenger had not been wearing a seatbelt, Trooper Stewart gave the benefit of the doubt to the passenger since he was wearing a [gray] shirt and the seatbelt was [gray] also.

Defendant offers no particular evidence of the insufficiency of the evidence to support the findings of fact. However, each of these findings is directly traceable to Trooper Stewart's testimony on direct examination at the suppression hearing, during which he recounted the events of the night in question. Trooper Stewart explained that he "did truly, 100 percent believe that [Defendant] wasn't wearing his seat belt." He also said that he "approached the passenger side and . . . . [w]hile [he] was at the vehicle [he] was getting an odor of alcohol from the vehicle." Lastly, he noted that, "If [he is] giving [the passenger] the benefit of the doubt, [he] couldn't say with a gray shirt, gray seat belt, that clear-cut, [he] couldn't have testified 100 percent that [the passenger] wasn't wearing [a seat belt]."

"The court's findings are conclusive on appeal if supported by competent evidence[.]" *Wainwright*, 240 N.C. App. at 84, 770 S.E.2d at 104. Competent evidence is defined as "evidence that a reasonable mind might accept as adequate to support

the finding." *State v. Ashworth*, 248 N.C. App. 649, 651, 790 S.E.2d 173, 176 (citation omitted), *disc. review denied*, 369 N.C. 190, 793 S.E.2d 694 (2016). Because Trooper Stewart's testimony concerning the stop provided "evidence that a reasonable mind might accept as adequate," these findings are supported by competent evidence and are conclusive on appeal. *Ashworth*, 248 N.C. App. at 651, 790 S.E.2d at 176.

### 2. *Conclusion of Law*

Defendant also challenges conclusion of law 2, which states:

> Trooper Stewart's view of and belief that the passenger in Defendant's car was not wearing a seatbelt provided him more than an unparticularized suspicion or hunch that a law was being broken and gave him the minimal level of objective justification for making the traffic stop. The traffic stop was valid.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend. IV. As applied through the Fourteenth Amendment, the Fourth Amendment "impose[s] a standard of reasonableness upon the exercise of discretion by government officials, including law enforcement agents, in order to safeguard the privacy and security of individuals against arbitrary invasions." *Delaware v. Prouse*, 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667 (1979) (internal quotation marks omitted). Accordingly, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250, 114 L. Ed. 2d 297, 302 (1991).

"[R]easonable suspicion is the necessary standard for traffic stops, regardless of whether the traffic violation was readily observed or merely suspected." *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008). With regard to an officer's authority to lawfully stop a vehicle, our Supreme Court has held that "[t]he stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training." *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994). To assess the validity of a stop, "[a] court must consider the totality of the circumstances—the whole picture in determining whether a reasonable suspicion to make an investigatory stop exists." *Id.* at 441, 446 S.E.2d at 70 (internal quotation marks omitted); *see also State v. Nicholson*, 371 N.C. 284, 290, 813 S.E.2d 840, 844 (2018) ("Assessments of reasonable suspicion are often fact intensive, and courts must always view facts offered to support reasonable suspicion in their totality rather than in isolation.").

Here, Defendant argues that "[a] subjective and admittedly mistaken observation that a passenger is not wearing a seatbelt cannot, logically, serve as the objectively reasonable basis for performing an investigative stop of a vehicle." We disagree.

It is manifest that "[t]he Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes–whether of fact or of law–must be *objectively*

reasonable." *State v. Eldridge*, 249 N.C. App. 493, 498, 790 S.E.2d 740, 743 (2016) (citation omitted). The issue in this case is whether Trooper Stewart's mistake of fact—i.e., his mistaken belief that Defendant's passenger was not wearing a seatbelt—could provide reasonable suspicion to justify the stop.

It is well established that a law enforcement officer may stop a vehicle for a seatbelt infraction, and during the mission of the stop determine that probable cause exists to arrest a person for the commission of a separate offense. *See, e.g.*, *State v. Salinas*, 214 N.C. App. 408, 409, 715 S.E.2d 262, 263 (2011) (concluding that it was constitutional for police officers to stop the suspect on belief that he was not wearing his seatbelt, and then, "[b]ased upon [the d]efendant's physical appearance, conduct, and a strong odor of burnt marijuana, . . . eventually search[ ] the vehicle and discover[ ] drug paraphernalia"), *aff'd and modified*, 366 N.C. 119, 729 S.E.2d 63 (2012); *State v. Brewington*, 170 N.C. App. 264, 268-69, 612 S.E.2d 648, 651 (affirming a defendant's conviction where the car was stopped due to a seatbelt violation, only to discover drugs on the defendant's person upon reaching the car), *disc. review denied*, 360 N.C. 67, 621 S.E.2d 881 (2005).

Further, it is clear that a law enforcement officer's mistaken belief that a defendant has violated the law may nevertheless provide the reasonable suspicion required for a lawful stop. In *State v. Kincaid*, 147 N.C. App. 94, 96, 555 S.E.2d 294, 297 (2001), the defendant held up his hand to cover his face as he drove by the officer.

The officer recognized the defendant, and believed that the defendant's license had been revoked for several years. *Kincaid*, 147 N.C. App. at 96, 555 S.E.2d at 297. Upon stopping the defendant, however, the officer discovered that the driver's license was, in fact, valid. *Id.* Despite his mistake regarding the license, the officer proceeded to ask the defendant whether he could search the car for drugs, because he had previously heard that the defendant was a drug dealer. *Id.* The defendant consented to the search, which yielded the discovery of marijuana, and the defendant was arrested. *Id.* At a pretrial suppression hearing, the trial court found that "the officer had reasonable suspicion to stop [the] defendant, even though the suspicion proved to be wrong[,]" and concluded that the search was not unreasonable. *Id.* at 97, 555 S.E.2d at 297. On appeal, this Court held that "[a]lthough the officer's suspicion turned out to be incorrect," the officer had reasonable suspicion to stop the defendant in light of the totality of the circumstances. *Id.* at 98, 555 S.E.2d at 298.

In the present case, as in *Kincaid*, Trooper Stewart initially stopped Defendant based on a purported seatbelt infraction, not a reasonable suspicion that Defendant was driving while impaired. Trooper Stewart's mistake—failing to see a gray seatbelt atop a gray shirt—is one a reasonable officer could make. As Trooper Stewart explained:

> [T]he only reason I didn't cite him is not because I still
> didn't believe my initial suspicion but because I couldn't
> say 100 percent testifying with my hand on the Bible with
> him having a gray shirt that it could [sic] have been the

other way. But I did truly, 100 percent believe that he wasn't wearing his seat belt.

However, this reasonable mistake of fact did not divest Trooper Stewart of the authority to investigate the source of the odor of alcohol.

Trooper Stewart testified that he smelled alcohol "instantaneously." He explained that while he inquired into the seatbelt issue, he noted the smell of alcohol. Trooper Stewart asked whether Defendant and his passenger had been drinking:

> [i]mmediately following my initial giving the reason for why I stopped and listening to the passenger's articulation about him actually having his seat belt on. I did say, well, I appreciate that; however, right now I'm smelling alcohol coming out of your vehicle. And I said I understand it has nothing to do with your seat belt but I can't just ignore what I'm smelling.

In sum, Trooper Stewart's stop of Defendant's car was constitutional despite his mistake of fact regarding the passenger's seatbelt infraction. Trooper Stewart had a reasonable suspicion to justify his stop based on his "100 percent" belief that the passenger was not wearing a seatbelt. Furthermore, Trooper Stewart's inquiry into whether Defendant had been drinking was appropriate. *See Salinas*, 214 N.C. App. at 409, 715 S.E.2d at 263; *Kincaid*, 147 N.C. App. at 96, 555 S.E.2d at 297.

C.    Extension of the Traffic Stop and Probable Cause to Arrest

In his next two arguments, Defendant asserts that (1) Trooper Stewart unconstitutionally extended the traffic stop "in order to smell something"; and (2) there was no probable cause to arrest Defendant. However, because Defendant failed

to object to these purported errors at trial, we need not reach the merits of these arguments.

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(a)(1). However, an objection during "a trial court's evidentiary ruling on a pretrial motion [to suppress] is *not* sufficient to preserve the issue of admissibility for appeal unless a defendant renews the objection during trial." *State v. Oglesby*, 361 N.C. 550, 554, 648 S.E.2d 819, 821 (2007).

After careful review of the transcript, we cannot find—and Defendant does not identify—specific objections at trial concerning the issues raised on appeal. Instead, in his brief to this Court, Defendant directs our attention to a short colloquy with the trial court, which occurred at the beginning of the second day of trial:

> [Defense Counsel]: Judge, just for the record, I had just three objections that were just to preserve the record for appellate purposes. I don't know if the Court – I think the Court heard the last one but I don't know. I didn't say them entirely loud because they were just for, you know, for purposes of preserving those issues.
> But I would object to the stop at a point that the trooper said he was activating his blue lights to pull over [Defendant].
>
> The Court: I heard that objection. I think I overruled it, but I didn't hear any others.

> [Defense Counsel]: And then I objected to the arrest and then just to – out of an abundance of caution objected to the – before the intoxilyzer reading.
>
> The Court: You're saying that – you did object to before the intoxilyzer reading but I don't remember you objecting to the arrest. Your saying it is so now doesn't make it so, so I don't think you objected before the actual arrest.
>
> [Defense Counsel]: Well, did the Court hear my objection before the intoxilyzer reading?
>
> The Court: I did.

Plainly, Defendant never objected to either (1) the extension of the stop, or (2) whether there was probable cause to arrest Defendant. Because these arguments are constitutional in nature, and because "[c]onstitutional issues not raised and passed upon at trial will not be considered for the first time on appeal," *State v. Lloyd*, 354 N.C. 76, 86-87, 552 S.E.2d 596, 607 (2001)*,* we dismiss this portion of Defendant's appeal.[2]

## II. Trial

---

[2] In his reply brief to this Court, Defendant requests in the alternative that this Court invoke Appellate Rule 2 so that we may reach the merits of these arguments. Rule 2 provides that, "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules[.]" N.C.R. App. P. 2. However, a reply brief should be "limited to a concise rebuttal to arguments set out in the brief of the appellee which were not addressed in the appellant's principal brief," N.C.R. App. P. 28(h)(3), and Defendant may not assert new grounds for appellate review in the reply brief. *See State v. Triplett*, 258 N.C. App. 144, 147, 810 S.E.2d 404, 407 (2018).

From his jury trial, Defendant argues that the trial court erred in (1) denying his motion to dismiss; (2) admitting into evidence the results of portable breath tests under Evidentiary Rule 403; and (3) qualifying Trooper Stewart as an expert in HGN administration under Evidentiary Rule 702.

A.     Denial of Defendant's Motion to Dismiss

Defendant posits that the trial court erred in denying his motions to dismiss at the close of the State's evidence and all evidence. However, in his brief to this Court, Defendant offers a perfunctory argument, fewer than 100 words in length, asking this Court to reach a different outcome from that of the trial court. His argument consists of a few conclusory assertions that the trial court should have granted the motion to dismiss. More importantly, Defendant neglects to include any legal authority or references to the transcript upon which to base these assertions. Our Rules of Appellate Procedure make clear that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C.R. App. P. 28(b)(6). Having failed to cite any authority or make a proper argument to this Court, this portion of Defendant's appeal is "taken as abandoned." N.C.R. App. P. 28(b)(6).

B.     Admission of Breath Tests

Defendant next argues that the trial court "abused its discretion when it allowed the State to introduce evidence regarding two portable breath tests."

- 13 -

Defendant maintains that these "positive test results, as along with the prosecutor's description of alcohol circulating through Defendant's system, unduly prejudiced his defense."

### 1. *Standard of Review*

Admissions under Rule 403 are reviewed by this Court for an abuse of discretion. *State v. Adams*, 220 N.C. App. 319, 328, 727 S.E.2d 577, 584 (2012). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Elliott*, 360 N.C. 400, 419, 628 S.E.2d 735, 748 (quotation marks omitted), *cert. denied*, 549 U.S. 1000, 166 L. Ed. 2d 378 (2006).

### 2. *Evidentiary Rule 403*

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2019). The official comment to Rule 403 provides that "unfair prejudice" is "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *Id.* cmt.

Admissibility of evidence in driving-while-impaired cases is covered under Chapter 20 of our General Statutes. Where the suspect has been stopped, "[a] law-

enforcement officer may require the driver of a vehicle to submit to an alcohol screening test." *Id.* § 20-16.3(a). "The fact that a driver showed a positive or negative result on an alcohol screening test, but not the actual alcohol concentration result . . . is admissible in a court." *Id.* § 20-16.3(d).

In the present case, Defendant first asserts that "the admission of positive results . . . unduly prejudiced his defense." However, Trooper Stewart only testified to the positive test results, without revealing the actual alcohol concentration. The testimony was therefore in accordance with § 20-16.3(d), and was not erroneously admitted.

Defendant next contends that the State's reference in its closing argument to alcohol "circulating in [Defendant's] system" was prejudicial. A prosecutor is afforded a generous latitude in argument. *State v. Covington*, 290 N.C. 313, 327, 226 S.E.2d 629, 640 (1976). Counsel "may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case." *Id.* at 327-28, 226 S.E.2d at 640.

Here, the State's closing argument was aptly based on facts in evidence, as well as reasonable inferences drawn from those facts. The State recounted (1) the strong odor of alcohol coming from the car; (2) Defendant's admission to having consumed alcohol; and (3) the positive results from the portable breath tests conducted at the scene of the stop. Taken together, and in light of the wide discretion prosecutors are

permitted in closing arguments, we conclude that the trial court did not err in allowing the prosecutor to assert that alcohol was "circulating in [Defendant's] system," and that Defendant did not suffer any resultant prejudice.

C.     Trooper Stewart's Qualification as an Expert

Finally, Defendant argues that the trial court "abused its discretion in granting the State's motion to qualify [Trooper Stewart] as an expert, and thereafter admitting testimony regarding HGN testing." We disagree.

1. *Standard of Review*

This Court reviews the admissibility of expert testimony for abuse of discretion. *State v. Barker*, 257 N.C. App. 173, 176, 809 S.E.2d 171, 174 (2017).

2. *HGN Testing*

Evidentiary Rule 702 provides, in pertinent part, that "a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion[.]" N.C. Gen. Stat. § 8C-1, Rule 702(a). Expert testimony is appropriate where (1) it is based upon sufficient facts or data, (2) it is based upon reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Id.* Although our General Statutes broadly characterize admissible expert testimony as "scientific, technical or other specialized knowledge," the statute specifically provides that:

> (a1) Notwithstanding any other provision of law, a witness
> may give expert testimony solely on the issue of

impairment and not on the issue of specific alcohol concentration level relating to the following:

> (1) The results of a Horizontal Gaze Nystagmus (HGN) Test when the test is administered in accordance with the person's training by a person who has successfully completed training in HGN.

*Id.* § 8C-1, Rule 702(a1)(1).

In the case at bar, Trooper Stewart testified to his successful completion of HGN training with the North Carolina State Highway Patrol, and the State tendered him as an expert in "the administration and interpretation of horizontal gaze and nystagmus testing." Accordingly, pursuant to N.C. Gen. Stat. § 8C-1, Rule 702(a1)(1), the trial court did not err in qualifying Trooper Stewart as an expert based on his training and professional experience administering the test, or in admitting his testimony regarding HGN testing.

## Conclusion

We affirm the trial court's denial of Defendant's motion to suppress, and dismiss Defendant's unpreserved arguments found in Parts I(C) and II(A) of this opinion. Our examination of Defendant's remaining arguments and our review of the record lead us to conclude that Defendant received a fair trial, free from error.

AFFIRMED IN PART; DISMISSED IN PART; NO ERROR IN PART.

Judges STROUD and MURPHY concur.